[Crim. No. 2650. In Bank.—August 4, 1924.]

## THE PEOPLE, Respondent, v. ROBERT MATTHEW et al., Appellants.

[1] APPEAL—BRIEFS—PRACTICE.—The practice of including and intermingling in a brief presented in support of an appeal to the supreme court of points made in support of an appeal by different parties pending in the district court of appeal, with the apparent purpose of all the appellants to make the same brief serve a single purpose in both courts, is a practice which is not to be commended and should not be resorted to.

[2] CRIMINAL LAW — MURDER — ROBBERY—CONSPIRACY—VERDICT—EVIDENCE.—In a prosecution for murder, the murder having been committed by the defendants and two others in the execution of a common design and purpose, to wit, robbery, the evidence was sufficient to justify the verdict of guilty as against the defendant who did the shooting, as well as against the other defendant, even though the latter did not fire the fatal shot.

[3] ID.—EVIDENCE—STATEMENTS—VOLUNTARY CHARACTER OF.—In such prosecution, statements made by all of the alleged murderers concerning the facts of the killing having been shown by the prosecution to have been freely and voluntarily made, they were properly received in evidence subject to the limitation placed upon them by the trial court, aside from any question of the right of counsel for the accused to enter into a stipulation that the statements were voluntarily made.

[4] ID.—STATEMENT—EVIDENCE.—The statement of one of the murderers, although made in the absence of the other confederates, was admissible against its author, a proper foundation therefor having been laid.

[5] ID.—EVIDENCE—CONVERSATION.—In such prosecution there was no error in the ruling of the trial court in permitting in evidence the testimony of a witness for the prosecution, relating to a conversation which she had the day following the crime with one of the alleged murderers, where the trial court ruled and charged the jury expressly and affirmatively that such conversation was admissible only as against said alleged murderer.

[6] ID.—CONSPIRACY—EVIDENCE—DECLARATIONS.—It is not necessary that the existence of a conspiracy should be established by di-

2.₁ See 13 **Cal. Jur.** 600; 13 **R. C. L.** 729.
3. See 8 **Cal. Jur.** 99.
6. See 5 **Cal. Jur.** 516, 521; 5 **R. C. L.** 1088.

rect evidence, and even though the evidence tending to show a common conspiracy on the part of the alleged murderers to commit robbery was in a measure circumstantial in its character, nevertheless it was sufficient to warrant the inference that a conspiracy to commit such crime did in fact exist and therefore sufficed as a foundation for evidence as to the acts and declarations of one conspirator against another.

[7] ID.—CONSPIRACY—EVIDENCE—WAIVER OF OBJECTION—APPEAL.—In such prosecution, no objection to the testimony of the prosecution's witness, concerning the acts and declarations of some of the alleged murderers, having been made upon the ground that a *prima facie* showing of a conspiracy had not been made, even if it be conceded that such testimony was objectionable, the objection thereto cannot be made for the first time upon appeal.

[8] ID.—CONSPIRACY—EVIDENCE—ABSENCE OF OBJECTION—EFFECT OF. In such prosecution, objection not having been made by defendants to testimony concerning statements made by the other conspirators after the termination of the alleged conspiracy relative to what transpired during the progress and before the termination of the alleged conspiracy, in the absence of such objection the trial court was not called upon to rule upon the admissibility of the testimony and its admissibility cannot be questioned on appeal.

[9] ID.—UNDENIED STATEMENTS—ADMISSIBILITY OF.—In such prosecution, there was no error committed by the trial court in the admission in evidence of statements made by one defendant against another defendant which were not denied by either of them.

[10] ID.—LIMITED PURPOSE OF EVIDENCE—ABSENCE OF REQUEST FOR INSTRUCTION—APPEAL.—In such prosecution, no request having been made of the trial court that the jury be instructed that statements made by one defendant in the presence of another defendant and not denied by the latter were admissible only to show that particular defendant's attitude and demeanor when the statements were made, the contention that the trial court failed to so instruct will not be considered on appeal.

[11] ID. — MISCONDUCT — DISTRICT ATTORNEY. — In such prosecution, there was no misconduct on the part of the district attorney in asking the questions which elicited the testimony complained of from certain witnesses concerning the statements made by them, the record being particularly free of objectionable conduct, inadvertent or otherwise, on the part of the district attorney.

---

[12] ID.—REMARK OF TRIAL JUDGE—EVIDENCE—MISCONDUCT.—In such prosecution, the district attorney having asked a witness for the prosecution if one of the alleged murderers had said anything to her about any robbery, to which question objection was made that none of the defendants were charged with robbery, the remarks of the trial court, in reply to the objection, that "the district attorney stated what he expected to prove and there is already proof in here as to what occurred at the time. That is before the jury," did not constitute misconduct prejudicial to the defendants in view of the fact that the evidence, as it existed at the time the question was propounded and the ruling upon the objection was made, showed that the deceased was murdered during an attempted robbery.

[13] ID.—REMARK OF TRIAL JUDGE—EVIDENCE.—In such prosecution, where the district attorney attempted to lay a foundation for the impeachment of a witness by showing that she had made contradictory statements on a previous occasion, she having already testified before the grand jury, the remark of the trial judge in ruling upon an objection to a question propounded by the district attorney, that "She has made statements somewhere else. They are not bound only by what she testified before the grand jury. Statements made anywhere may be referred to," did not intimate any belief in the mind of the trial court that this particular witness was unworthy of belief.

[14] ID.—INSTRUCTIONS.—In such prosecution, where the trial court instructed the jury that "Where the killing is perpetrated by means of poison, etc. . . . here the means used is held to be conclusive of premeditation. Where the killing is done in the perpetration, or attempt to perpetrate, some one of the felonies enumerated in the statute, here the occasion is made conclusive evidence of premeditation," and such instruction had to do and was dealing only with an abstract proposition of law, it cannot be said, in view of the presumption that the jury were men of ordinary intelligence and fairly familiar with the English language, that they understood the instruction to mean that the trial court was expressing its opinion that in the instant case there was conclusive evidence of premeditation.

[15] ID. — INSTRUCTIONS — ABSENCE OF REQUEST FOR—EFFECT OF.—In such prosecution, in the absence of a request by defendants for an instruction to the effect that statements of the several defendants not made in the presence of another should be disregarded if they found that a conspiracy to commit the crime of robbery did not exist, and for an instruction as to what constituted a

12. See 8 Cal. Jur. 611.
15. See 8 Cal. Jur. 309; 14 R. C. L. 726.

termination of the conspiracy or an instruction defining the crime of robbery, the trial court did not err in failing to cover those subject matters in its charge to the jury.

(1) 17 C. J., p. 188, sec. 3496 (1926 Anno.). (2) 30 C. J., pp. 302, 303, secs. 548, 549. (3) 16 C. J., p. 644, sec. 1283. (4) 16 C. J., p. 669, sec. 1339. (5) 16 C. J., p. 659, sec. 1313. (6) 16 C. J., p. 650, sec. 1289. (7) 17 C. J., p. 70, sec. 3335. (8) 17 C. J., p. 56, sec. 3331. (9) 17 C. J., p. 325, sec. 3665 (1926 Anno.). (10) 16 C. J., p. 1059, sec. 2500. (11) 16 C. J., p. 891, sec. 2228. (12) 16 C. J., p. 831, sec. 2101. (13) 16 C. J., p. 834, sec. 2104. (14) 30 C. J., p. 348, sec. 601. (15) 16 C. J., p. 1056, sec. 2498.

APPEAL from a judgment of the Superior Court of Los Angeles County. Arthur Keetch, Judge. Affirmed.

The facts are stated in the opinion of the court.

Samuel Rosenthal for Appellants.

U. S. Webb, Attorney-General, John W. Maltman and H. H. Linney, Deputies Attorney-General, for Respondent.

LENNON, J.—The four defendants in this case were jointly indicted and jointly tried for the crime of murder. The defendants Matthew and Sinuel were convicted of murder in the first degree and sentenced to suffer the death penalty. The other two defendants, Pope and Williams, were convicted of murder in the second degree and sentenced to imprisonment for life in the state penitentiary. The appeal to this court is by the defendants Matthew and Sinuel. The other two defendants, Pope and Williams, appealed to the district court of appeal. (*People* v. *Matthew* (Cal. App.), 228 Pac. 417.) [1] Included and intermingled in the brief presented in support of the appeal to this court of the defendants Matthew and Sinuel are the points made in support of the appeal of the other two defendants which is now pending in the district court of appeal. Apparently it was the purpose of the respective counsel for all of the defendants to make the same brief serve a single purpose in both courts. This is a practice which is not to be commended and should not be resorted to again. Whatever may have been the necessity for a resort to such procedure, the confusion which results in the consideration of the law and facts ap-

plicable to the points presented in support of the appeal of one set of defendants, as distinguished from the points made in support of the appeal of the other set of defendants, is an evil which more than counterbalances any necessity which may have prompted the procedure.

As gleaned from the evidence, adduced upon the entire case and succinctly stated, the salient facts of the prosecution's case upon which it relied for and secured a conviction of the defendants Matthew and Sinuel are these:

The four defendants on October 30, 1923, rode in an automobile owned by the defendant Sinuel and driven by the defendant Pope to Bell Station in the county of Los Angeles. Pope was employed as the driver of the automobile by the defendant Sinuel. Upon arriving at Bell Station sometime about 6:30 o'clock of the evening in question, the defendant Sinuel directed the defendant Pope to halt the car. Sinuel then alighted. He went immediately and directly into the near-by grocery store conducted by the deceased, Coleman Stone. After the defendant Sinuel left the car the defendant Matthew got out of the car and followed the defendant Sinuel into the store.

Just prior to the time and at the time the defendant Sinuel entered the store the deceased and his wife were seated in the kitchen adjoining the store counting the receipts for the day. Hearing the slamming of a screen door which opened from the street into the store, the deceased proceeded into the store to wait upon the ostensible customers and he found the defendant Sinuel and the defendant Matthew there. Sinuel asked for a package of Camel cigarettes and tendered a one dollar bill in payment thereof to the deceased. Upon receiving the dollar bill the deceased turned around and went to the cash register, which contained but a dollar and fifty cents, to make the required change. Shortly thereafter the wife of the deceased heard the report of a revolver. She ran to the door leading from the kitchen into the store. Upon opening the door she saw two negroes standing in the store. The one nearest to her, whom she identified as the defendant Sinuel, pointed a revolver at her. She slammed the door shut, ran into the kitchen and out on to the porch of her home, all the while screaming. Within a few moments she returned to the store, which was well lighted, and found her husband, the de-

ceased, lying on his side on the floor. Shortly thereafter the deceased was taken to the hospital, where he died a day later as the result of a gunshot wound inflicted upon him by the defendant Sinuel on the evening in question. While at the hospital the deceased in a statement, during the making of which he expressed the belief that he was about to die, declared that "one of the darkies had a slug in one hand and a revolver in the other" and that while he was in the act of making change one of the negroes said to him, "Give me your money," to which the deceased replied, "I will give you all I have got." Shortly after the shooting a daughter of the deceased ran to a door opening from a side room into the store and while standing there she saw one of the defendants, Sinuel, lean over and kick the deceased in the head and then proceed to search the deceased. The defendant Sinuel testified that the defendant Matthew stepped around the end of one of the store's counters and examined the cash drawer, saying, "There is only ten cents in this drawer." The two defendants Matthew and Sinuel then left the store. They did not walk out "but sneaked out, just as low to the ground as they could run and run as fast as they could run." The automobile in which they had driven to the store was gone, the defendants Pope and Williams having driven it to a house at No. 620 Ceres Street in the city of Los Angeles. The defendants Matthew and Sinuel after walking some distance boarded a street-car and went to the same house where they resided. Sinuel, upon arriving at the house, directed Pope to drive him and Matthew to Santa Ana, which Pope did. Pope then returned with the automobile to Los Angeles. Matthew and Sinuel went to San Diego, and after two days started back to Los Angeles and were apprehended on the road.

[2] It was the theory of the prosecution's case that the four defendants had come to the scene of the homicide for the purpose of committing the crime of robbery and that they were therefore guilty of the crime of murder committed in the execution of that common design and purpose. The evidence previously outlined was amply sufficient to justify the verdict as to the guilt of the defendant Sinuel. It was also sufficient to justify the verdict as to the defendant Matthew predicated upon the theory, as it evidently was, that he was engaged with the defendant Sinuel in the crime

of robbery and was, therefore, equally guilty with Sinuel of the crime of murder, even though he did not fire the fatal shot.

Subsequent to the apprehension of the four defendants, and while they were in custody, each of them made statements concerning the facts of the killing. These statements were read to the jury at the trial, it being stipulated by counsel representing Sinuel and Matthew that the statements were voluntarily made. [3] The prosecution, while accepting the stipulation referred to, elected to and did make a sufficient showing that the statements in question were freely and voluntarily made and, therefore, aside from any question of the right of counsel to enter into the stipulation, the statements in question, subject to the limitation which was put upon them by the court, were properly received in evidence. At the time the statement of Matthew was made it seems he was questioned alone and the trial court ruled and charged the jury, in response to objection, that the parts of his statement which were made in the absence of the other defendants and tended to incriminate them could not be made to apply to them. [4] The trial court did not err in admitting this statement of Matthew, which related only to himself. A proper foundation for the statement was laid and it was admissible against the defendant Matthew even though it was not made in the presence of the other defendants.

[5] There was no error in the ruling of the trial court in permitting in evidence the testimony of the witness Rachael Braxton, called to testify upon behalf of the prosecution, relating to a conversation which she had the day following the crime with the defendant Pope. While the conversation was admissible only as against the defendant Pope the court so ruled and so charged the jury expressly and affirmatively.

There is no merit in the contention that the trial court erred in its ruling in admitting against each of the defendants the testimony of the prosecution's witness, Alphonso Riley, concerning the acts and declarations of some of the defendants made during the course of the journey which all of the defendants, together with Riley, made to Santa Ana in Orange County, after the killing. In this behalf it is argued that inasmuch as some of the acts and declarations

were not committed or made in the presence of all of the defendants the testimony complained of was inadmissible unless it was first shown *prima facie* that a conspiracy existed between all of the defendants who committed the crime of robbery which ultimately resulted in the crime of murder. And it is also contended that the court erred in admitting without a *prima facie* case of conspiracy having been established, evidence against the defendants Matthew and Sinuel of acts and declarations of the other defendants not occurring or made in the presence of these particular defendants against whom the evidence was admitted.

[6] It is not necessary that the existence of a conspiracy should be established by direct evidence and even though the evidence tending to show a common conspiracy on the part of the four defendants to commit robbery was in a measure circumstantial in its character, nevertheless it was sufficient to warrant the inference that a conspiracy to commit such crime did in fact exist and therefore sufficed as a foundation for evidence as to the acts and declarations of one conspirator against another. [7] Moreover, no objection to the testimony complained of was made upon the ground that a *prima facie* showing of a conspiracy had not been made and, therefore, even if it be conceded that such testimony was objectionable, objection thereto cannot be made for the first time upon appeal.

[8] Complaint is made that the trial court erred in admitting in evidence against the defendants Sinuel and Matthew testimony concerning statements made by the other codefendants after the termination of the alleged conspiracy relative to what transpired during the progress and before the termination of the alleged conspiracy. The record does not show that any objection upon that ground was made to such testimony. In the absence of objection the trial court was not called upon to rule upon the admissibility of the testimony and the same having been received without objection its admissibility cannot now be questioned.

[9] The record does not support the contention that the trial court admitted incriminatory statements of one defendant made in the presence of another defendant, the truth of which statements was denied by the latter. In making the statement to the district attorney concerning the killing and the circumstances attending it, the defendant Sinuel said

that the defendant Matthew did the shooting. Matthew was present at the making of this statement but he did not deny the accusation at the time it was made. Later, when he himself was questioned about the murder, Matthew denied doing the shooting and said that Sinuel was the man who fired the fatal shot. The defendant Sinuel, being present, did not deny this accusation. Later on, during the course of the trial of the case when the statement of Williams was read to the jury, all of the statements made by him which had been denied by Sinuel at the time they were made were stricken out and the jury, upon the request of counsel, instructed to disregard these statements. Surely no complaint can be made of the ruling of the trial court restricting the reading of the statement to those matters which were not denied by each defendant and clearly no error was committed in the admission in evidence of the statements made by one defendant against another defendant which were not denied by either of them.

[10] No request was made of the trial court that the jury be instructed that statements made by one defendant in the presence of another defendant and not denied by the latter were admissible only to show that particular defendant's attitude and demeanor when the statements were made and therefore the contention that the trial court failed to so instruct will not be considered now.

[11] There was no misconduct on the part of the district attorney in asking the questions which elicited the testimony complained of from these witnesses concerning the statements made by them. Nor are we able to perceive any misconduct on the part of the district attorney appearing elsewhere in the record. On the contrary, the record shows that throughout the trial no attempt was made by the district attorney to place before the jury any improper matter either by questions asked or statements made and that whenever objection was made to questions propounded by the district attorney the court, whenever the objections were well taken, sustained them and promptly instructed the jury to disregard whatever may have been said by way of answer to the questions. In short, the record of this case is particularly free of objectionable conduct, inadvertent or otherwise, on the part of the district attorney.

[12] Certain comments of the trial judge made when ruling upon objections are claimed to be misconduct in this, that they amounted to an intimation by the court that the evidence showed an attempted commission of the crime of robbery. The comments complained of occurred in a colloquy between court and counsel concerning the sufficiency of an objection and were made at a point in the trial of the case when there had been admitted in evidence testimony of three different witnesses as to what took place at the store when the deceased was killed. The sum and substance of that evidence warrants but one reasonable conclusion, and that is that the deceased was murdered during an attempted robbery. The district attorney had asked Mrs. Lewis, a witness for the prosecution, if the defendant Murphy Williams had said anything to her about any robbery and counsel for defendants' objection was made upon the ground that none of the defendants were charged with robbery. The court, in reply to the objection remarked, "the district attorney stated what he expected to prove and there is already proof in here as to what occurred at the time. That is before the jury." It is evident that there was nothing in what was said either by the district attorney or the court which could have prejudiced the defendants in view of the state of the evidence as it existed at the time the question was propounded and the ruling upon the objection was made.

[13] The same may be said as to the remarks of the court made during an objection to the question propounded by the district attorney to the witness Alma Brown. This witness had testified to a conversation between herself and the defendant Sinuel. The district attorney attempted to lay a foundation for the impeachment of this witness by showing that she had made contradictory statements on a previous occasion, she having already testified before the grand jury. And when ruling upon an objection the court remarked, "She has made statements somewhere else. They are not bound only by what she testified before the grand jury. Statements made anywhere may be referred to." Clearly this remark of the trial court did not intimate any belief in the mind of the trial court that this particular witness was unworthy of belief.

[14]  In its instructions to the jury the trial court charged, among other things, as follows: ''Where the killing is perpetrated by means of poison, etc. . . . here the means used is held to be conclusive evidence of premeditation. Where the killing is done in the perpetration, or attempt to perpetrate, some one of the felonies enumerated in the statute, here the occasion is made conclusive evidence of premeditation.'' Counsel for defendants criticise this instruction because it is asserted the use of the word ''here'' in the instruction was calculated to mislead the jury and convey to them the impression that it referred to the case at bar and that in the case at bar there was conclusive evidence of premeditation. Obviously, the instruction complained of had to do and was dealing only with an abstract proposition of law, and presuming as we must that the jury were men of ordinary intelligence and fairly familiar with the English language, it cannot be said that they understood the instruction to mean that the trial court was expressing its opinion that in the instant case there was conclusive evidence of premeditation.

[15]  If counsel for the defendants had desired an instruction to the effect that statements of the several defendants not made in the presence of one another should be disregarded if they found that a conspiracy to commit the crime of robbery did not exist, they should have made a request for such an instruction. And if counsel for the defendants deemed that the evidence adduced upon the entire case required an instruction to the jury as to what constituted a termination of the conspiracy or needed a definition of the crime of robbery, a request for such instructions should have been made and in the absence of such a request the trial court did not err in failing to cover those subject matters in its charge to the jury. (See *People* v. *Winthrop,* 118 Cal. 85, 91 [50 Pac. 390]; *People* v. *Rogers,* 163 Cal. 476 [126 Pac. 143].)

The verdict and the judgment are not contrary to the law and the evidence. In so far as the defendants Matthew and Sinuel are concerned the evidence sufficiently shows that they were guilty of murder in the first degree. They were accorded a fair and an impartial trial and were properly

convicted.   There being no error in the record, prejudicial or otherwise, the judgment must be and is affirmed.

Myers, C. J., Seawell, J., Waste, J., Tyler, J., *pro tem.,* and Houser, J., *pro tem.,* concurred.