[Crim. No. 3283. In Bank.—April 9, 1930.]

THE PEOPLE, Respondent, v. JOHN GOMEZ et al., Appellants.

Willard W. Shea, Public Defender, and Guy R. McCoy for Appellants.

U. S. Webb, Attorney-General, Lionel Browne, Deputy Attorney-General, Earl Warren, District Attorney, and Paul St. Sure, Deputy District Attorney, for Respondent.

SHENK, J.—John Gomez and George Ryley were charged by indictment in the county of Alameda with the murder of George Jones. They were tried together, the jury returned verdicts of guilty as charged, without recommendation, and judgments of death were pronounced against them. Appeals from the judgments of conviction and from the orders denying their motions for a new trial are prosecuted on one record.

No point is made that the evidence is insufficient to justify the verdicts of murder of the first degree. Indeed, no other conclusion would have been warranted under the evidence. (Sec. 189, Pen. Code.) The defendants were young men who had lived at or in the vicinity of Livermore and had known each other for many years. The deceased, at the time of the murder, was a man about seventy years of age. He was the proprietor of a taxicab service which had its headquarters in a pool-hall, also conducted by the deceased. The defendants had known him also for several years.

Prior to the night of May 18, 1929, the defendants deliberately conspired to rob the deceased, "Dad" Jones, as he was familiarly known. In concert they conceived the plan of luring the deceased, by a false telephone call in the night-time, to a point outside of Livermore, knock him unconscious with a gas-pipe, rob him of the cash on his person and return to the pool-hall, there to loot the place before the deceased could recover consciousness and return to his place of business. They consummated their purpose on the night of May 18th. The deceased was by telephone requested to perform taxicab service at Olivina Gates, a spot some two or three miles from Livermore, and he responded to the call. Failing conveniently to find a gas-pipe, the defendants acquired a hammer with which to assist them in perpetrating the crime. When the deceased arrived at the place appointed one of the defendants struck the deceased in the head with the hammer, immediately depriving him of consciousness, which he never regained. There was no evidence of resistance on the part of the deceased. The autopsy disclosed that the skull had been fractured by a blunt instrument in several places. In some places the skull bone had been driven into the brain tissue as much as two inches. The jaw was also fractured and the scalp and face were otherwise contused. The defendants divided equally between themselves the $23.20 in cash found upon the person of the deceased and threw away his wallet, which contained checks.

After their apprehension each of the defendants admitted the commission of the crime charged, but each sought to relieve himself of its atrocity by contending that the other had wielded the hammer. Under the circum-

stances it was immaterial which struck the death blow, for each is equally guilty of the crime. (*People* v. *Kauffman*, 152 Cal. 331 [92 Pac. 861].)

As grounds for the appeal it is contended that the court committed error in permitting the prosecuting officer to inquire of the jurors on *voir dire* as to their state of mind respecting the death penalty, particularly whether they would have any hesitancy in bringing in a verdict carrying the death penalty if there was no proof of extenuating circumstances and the punishment should be mitigated. The court took an active part in the examination of the prospective jurors, correctly stating in connection with the examination of Claude S. Thomas, who subsequently served as a juror, that in a first degree murder case the question of the penalty "is committed exclusively to the conscience and judgment of the jurors; that if a verdict be brought in finding the defendant guilty of murder of the first degree and nothing is said about the penalty it becomes the duty of the court to impose the extreme penalty and hang him. But the jury is clothed with exclusive judgment and discretion in all these cases of murder of the first degree, of mitigating the punishment, and they may, if they desire to mitigate the punishment and make it life imprisonment, bring in a verdict which finds the defendant guilty of murder of the first degree and fix the punishment at imprisonment in state prison for life."

In the general charge to the jury the court again correctly stated the law as follows: "The punishment for murder of the first degree is death or confinement in the state prison for life, at the discretion of the jury trying the case. The law prescribes no rules or tests for the guidance of jurors in the exercise of its discretion in determining whether the greater or lesser penalty shall be inflicted, but leaves the question of punishment solely to the judgment and conscience of the jury."

Both the People and the defense in a first degree murder case have the right to test on *voir dire* the attitude of a prospective juror regarding the infliction of the death penalty. But there is no place in such examination for the intimation or suggestion that the question of the punishment in such a case is not one solely within the discre-

tion of the jury. The record herein discloses that the trial court was fully aware of the criticism and strictures placed by this court upon the instructions in the cases of *People* v. *Bollinger,* 196 Cal. 191 [237 Pac. 25], and *People* v. *Arnold,* 199 Cal. 471 [250 Pac. 168]. We find no error in the rulings of the court in connection with the *voir dire.*

■ Objection is made to the introduction in evidence of a photograph of the deceased taken after the autopsy had been performed. This photograph showed marks of the incisions made for the purposes of the autopsy. It is contended that the abhorrence of the jurors was thereby prejudicially aroused. But the autopsy surgeon pointed out to the jury the marks resulting from his examination and it is not claimed that the exhibit otherwise did not correctly depict the condition of the deceased after the murder. There is no merit in the contention.

■ It is further contended that the court misconstrued the law in referring to the death penalty as the "extreme" penalty and that the district attorney was guilty of misconduct in commenting upon the effect in this state of a sentence of life imprisonment. The death penalty has been denominated the "extreme penalty" on numerous occasions by this court and it is so generally considered. The argument is that life imprisonment would be greater punishment than death in this case because of the youth of the defendants. It may fairly be assumed, as urged by counsel for the People, that this same argument was presented to the jury by defendants' counsel. The correctness of this assumption is not denied by counsel for the defense. The argument of the latter is, under the practice, not printed in the transcript. It therefore seems entirely probable that the remark of the district attorney as to the effect of a sentence of life imprisonment in this state was provoked by the argument to the jury on behalf of the defendants. Furthermore, no objection to the remarks of the district attorney was interposed at the time they were made.

We find no error in the court's instructions to the jury nor in the refusal to give certain other requested instructions. The defendants were fairly tried for the offense of which they were charged and, notwithstanding the very

earnest presentation of their cause on appeal, we find no ground for reversal.

The judgments and orders are, and each is, affirmed.

Richards, J., Seawell, J., Preston, J., Curtis, J., Langdon, J., and Waste, C. J., concurred.

Rehearing denied.