[Crim. No. 3625.   Second Dist., Div. Three.   Feb. 26, 1943.]

THE PEOPLE, Respondent, v. RAYMOND M. DURAN et al., Appellants.

Philip S. Schutz and Alexander L. Oster for Appellants.

Earl Warren, Attorney General, and Gilbert F. Nelson, Deputy Attorney General, for Respondent.

SHAW, J. pro tem.—The defendants Duran, Elizarraras and Gloria were jointly charged by the information herein with the crimes of kidnapping and forcible rape, committed upon the same person and at the same time. Three other defendants, Muro, Jorquez and Moreno, were charged by a separate information with identical offenses. The cases were consolidated and tried together and all the defendants were convicted of both the crimes above mentioned. The defendants Duran, Elizarraras and Gloria appeal.

The alleged victim of the offenses charged was Carmen Murietta. A summary of her testimony follows: At the time of the offenses charged she was 32 years of age, was living with Amos Murietta as his wife and had been so living since 1937 but was not married to him. Before 1937 she had lived with another man to whom she was not married, and before that had been married to a third man, from whom it does not appear whether she was divorced. She and Amos had spent the evening in Los Angeles, and on the way to their home in Watts, they got off the streetcar about 2:30 a. m. on a Sunday morning. While they were walking from the streetcar, she saw an automobile with no lights on and three boys on the sidewalk by it; then two more boys got out of the car. Four of them seized her by her arms and legs and put her in the car. At the same time the fifth one hit Amos Murietta in the neck and threatened him with a knife. She called to Amos for help, and the boy with the knife said "you come over here

and I am going to stick the knife in you." Amos "stood there" and the boys all jumped into the car. Carmen screamed, a handkerchief was put into her mouth and her eyes were covered. There were eight boys in the car and one of them said to her, "if I scream and holler and hit them they are going to choke me." The car was driven to some other place, the location of which she did not know. There were no houses close and no passers-by. Here the handkerchief was removed and her eyes uncovered. They partially undressed her and said they were going to have sexual intercourse with her. All eight of them then did have intercourse with her, some three times and some twice, making a total of twenty-one such acts. She resisted, but was forcibly compelled to submit, four boys holding her down on the back seat of the car by her arms and legs while the acts were performed. While this was going on some of the boys lit matches and smoked cigarettes, so that she was able to see the faces of all. She identified all the appellants, as well as the other defendants on trial, as among the eight who committed the acts above described. She also contrived to see and remember the first four figures and the letter of the license number of the car in which she was taken, and gave these to the police. Her assailants kept her about three hours and then released her about two blocks from her home. She walked home, and finding there Amos Murietta, at once went with him to the Watts police station, where she complained to the police of what had happened to her. The next day she was sore all over and had a bruise on her arm and another on her neck.

This testimony of the complaining witness had some corroboration. Her references to "boys" are explained by the facts, appearing from the testimony of the various defendants, that two of the appellants were twenty years of age and the other nineteen, two of the other defendants were sixteen and the third, although his exact age is not given, was young enough to have been before the juvenile court in this matter. Shortly after she went to the police station, she was taken to the Los Angeles Receiving Hospital, where a city physician, Dr. Olney, examined her. He testified that she was then cool and collected but very angry. He found no evidence of any recent injuries on her external genitalia or in her vaginal vault, but said that acts such as those to which she testified might occur without any lacerations, that bruises might make their appearance later than his examination, and that the

lighting conditions under which he made his examination were not good for discovering irritation, and a minor condition of congestion and redness would not appear. Dr. Olney found a thick secretion in her vaginal vault, from which he took a smear. A police chemist testified that he examined this smear microscopically and found in it spermatozoa from the male seminal fluid. Dr. Olney testified that such spermatozoa would not remain where he found them more than twenty-four hours, which was the upper limit, the average time being two to twelve hours.

Police officer Winter testified that during his investigation Carmen Murietta showed him a dress, that he found white stains near the bottom, upon its hem, and that she was wearing this dress at the trial. Carmen testified that the dress she wore at the trial was the same one she wore at the time of the attack upon her.

Amos Murietta corroborated the complaining witness in regard to the kidnapping. He testified as she did to their trip to Los Angeles and their return, and that as they were walking from the streetcar to their home they were attacked. The first he knew of it was that he was hit in the back of his neck. He staggered and was about to fall and saw that the person attacking him had a knife. When this happened Carmen screamed, "and when this fellow held me at bay with the knife a car drove up along the curb and two more boys jumped out of the car, and four, two grabbed her by the legs and two by the hands and shoved her in the car." The one with the knife threw it at Amos, then ran and got on the running board and the car drove off. It was a tan colored four-door sedan. Amos then went home and from there went at once to the Watts police station, where he made complaint of the attack.

The defendant Gloria testified that he owned a tan car whose license number had the same first four figures and letter as those which Carmen Murietta said she saw. A police officer testified that this car, which Gloria said was his, had the same license number given by Carmen, that it was a tan sedan, and that a white spot was found on its back seat. In their testimony the three appellants admitted being together during the evening preceding the attack, but said they separated between midnight and 12:30 a. m. and went to their respective homes, arriving there by 12:30 a. m., and staying

there the rest of the night. On the last two points each was corroborated by one or more members of his family. Defendant Gloria testified that before going home he loaned his car to another boy and went home in a car driven by Elizarraras.

Police Officer Winter testified that in the presence of himself and Officer Ullery, appellant Gloria admitted his participation in the affair, saying that he and the other two appellants, one Negretti and three juveniles whose names he did not know, were driving around, and saw the complaining witness and her husband walking down the street, that Negretti chased the husband with a knife and some of the other boys threw the woman in the car, and that they parked the car and had sexual intercourse with the victim, stating that he, Gloria, tried but was unable to consummate the act. Officer Winter also testified that to himself and Officer Ullery, appellant Elizarraras said he was with the boys but did not rape the woman. Officer Winter further testified that in the presence of himself and Officers Didion and Ullery, appellant Duran admitted that he was with the boys and had sexual intercourse with the woman. The conversation with Duran occurred three-quarters of an hour after his arrest; those with the other appellants the next day after their arrest. Appellant Gloria denied making any admission except that he "was one of the guys." Duran denied making any admission at all, and so did Elizarraras. Each appellant said violence was used on him by the police officers for the purpose of getting a confession. This was denied by the police officers.

Each of the three nonappealing defendants testified that, being on the streets together in the early hours of the morning, they came upon a car by which were six boys unknown to them and near which the complaining witness and a man were standing cursing each other; that the man then left and the other boys asked these defendants if they wanted to have intercourse with the complaining witness and were answered in the affirmative; then she got into the car voluntarily, all the boys got in and they drove away to a spot where these three nonappealing defendants and the complainant got out; they had intercourse with her with her consent, and collectively paid her one dollar; and they then went away, after being told by her that it was late for them and they had better go home.

The prosecution on rebuttal presented, over objection by the defendants Muro, Jorquez and Moreno that it would be

hearsay, the testimony of Police Officer Young that Amos Murietta, when he first arrived at the police station, about a half hour after the time fixed by Murietta for the encounter in which Carmen was taken away, told this officer a story which is substantially the same as that he related as a witness in this case.

The appellants, in support of their appeal, urge the following propositions for a reversal:

1. The evidence in support of the judgment is inherently incredible;

2. The trial court committed error in receiving evidence of the statement of Amos Murietta to the police officer;

3. The trial court erred in instructing the jury on the law of conspiracy;

4. An instruction given on the law regarding accusatory statements was erroneous;

5. An instruction regarding the evidence mentioned in proposition 2 was erroneous;

6. The district attorney was guilty of prejudicial misconduct.

■ 1. Appellants' first proposition is untenable. In support of it they rely mainly on the case of *People* v. *Flores*. (1936) 15 Cal.App.2d 385 [59 P.2d 517]. In that case several defendants had been convicted of rape committed by each on the same victim on the same occasion, and in that respect the case resembled the case at bar. The testimony presented there as to the circumstances surrounding the offenses and the details of the conduct of the perpetrators and the victim differed greatly from that appearing here, the differences being mainly on the side of incredibility, and yet the court said, at page 400: "Although the foregoing sordid tale is one that strains one's credulity, we are not prepared to say, as a matter of law, that the evidence of the witnesses for the prosecution was so inherently incredible that it cannot be accepted." The judgment there was reversed, but the ground of reversal was errors in ruling on evidence—errors which were held prejudicial by reason of the improbable nature of the evidence in support of the verdict. *People* v. *Castillo*, (1935) 5 Cal.App.2d 194 [42 P.2d 682], is also cited by appellants. That was also a case of forcible rape, but otherwise it bears no resemblance on the facts to that before us. The court there said that it could not hold the evidence insuffi-

cient, as a matter of law, to support the verdict of guilty, but characterized it as "weirdly improbable" and for that reason held that certain errors must result in a reversal. We do not regard the evidence here as subject to the characterizations applied to that given in the two cases just cited.

2. Whether appellants' second proposition is tenable or not we need not decide, for appellants are in no position to raise it. The appellants were all represented at the trial by one attorney. The other, nonappealing, defendants were represented by other attorneys, two of them appearing by a deputy public defender and one by private counsel. When Officer Young was asked, on rebuttal, to relate the conversation he had with Amos Murietta when the latter first appeared at the police station, the district attorney stated that he offered the testimony only for the limited purpose of refuting "the suggestion that Mr. Murietta has trumped up his testimony here in court concerning what took place at the time and place on the street when his wife was taken off the street and kidnaped." An objection was made by the deputy public defender on the ground that this would be hearsay. The court overruled the objection and stated that the evidence was received only for the limited purpose for which it was offered. The officer then gave the testimony previously stated by us. After it was received the deputy public defender made a motion to strike it, on the same ground as that of his objection, and in connection with his motion presented briefly his contention as to the law governing the matter. The motion was denied. No objection or motion to strike was directed at this testimony by appellants' attorney and he took no part in the discussion of it, although he was present at the time and cross-examined this officer on other matters. No sort of stipulation or understanding that any defendant should have the benefit of objections made by the attorney for any other defendant has been called to our attention, and a search of the record by us has disclosed none. In the absence of such stipulation or understanding, where two defendants appear at the trial by separate counsel, one cannot take advantage on appeal of objections raised only by counsel for the other. *(Lusco* v. *United States* (C.C.A. 2, 1923) 287 F. 69.) It must be concluded that these appellants were satisfied to have this evidence in the case, and waived any objection they might have to it. They cannot raise the objection for the first time on appeal. (8 Cal.Jur. 500, 503.)

3. Appellants' third proposition is untenable. They concede that the instructions given on the law of conspiracy were correct, but say, in support of their point, that "appellants were not charged with conspiracy and the case was not tried on the theory of a conspiracy," citing *People* v. *Sheffield,* (1930) 108 Cal.App. 721, 724 [293 P.72]. In that case it was held that instructions on the law of conspiracy should not have been given, for the same reasons urged by appellants here, but there the court said that "it was stated repeatedly throughout the trial that no conspiracy existed between the defendants." No such statements were made in the present case. It is true there was no charge of a conspiracy here, but evidence of a conspiracy is proper even where no conspiracy is charged in the indictment or information. (*People* v. *Gregory,* (1936) 12 Cal.App.2d 7, 15 [54 P.2d 770].) We cannot agree that the case was not tried on the theory of a conspiracy. The word "conspiracy" was not used in the course of the trial, but there was ample evidence to show that all the defendants on trial and two other persons were acting together for the purpose of attaining a common object, that is, the kidnapping and rape of the prosecuting witness. This would be sufficient proof of a conspiracy to that end. Circumstantial evidence is sufficient to prove a conspiracy; there need not be direct evidence that the parties met together and agreed to undertake the performance of an unlawful act. (*People* v. *Gregory, supra,* p. 16.) Here the extra-judicial statements of two of the appellants, which were placed before the jury, denied that they had personally committed a rape upon the prosecuting witness. If these denials were accepted as true, these two appellants could, nevertheless, be found guilty of rape by reason of their participation in the conspiracy above mentioned, in pursuance of which others did commit that crime. (*People* v. *Stoddard,* (1941) 48 Cal.App. 2d 86, 89 [119 P.2d 160].) In order that the jury might understand this it was quite proper to instruct them on the law of conspiracy.

4. Appellants' fourth point is also untenable. The instruction complained of, after stating fully the rule that where a defendant stands mute in the face of an accusation of crime, there being a fair opportunity to reply, his silence may be taken against him "as evidence indicating an admission of guilt," stated further, in language which appellants

claim is erroneous, that "The only purpose for which an accusatory statement is received in evidence is to show acquiescence or admission on the part of a defendant in the face of an accusatory charge." This is criticised on the authority of *People* v. *Flores, supra,* (1936) 15 Cal.App.2d 385, 405 [59 P.2d 517], where an instruction on the same subject informing the jury that the manner and actions of a defendant in the face of accusatory statements are admissible "as tending to show acquiescence" was held erroneous because of the words quoted, it being the province of the jury "to determine the effect of such evidence." The ground of the holding was not further explained. Apparently the idea of the court was that the use of the word "tending" made this an instruction on the weight of the evidence. Even if it were such, we question whether it should be held improper, in view of the court's constitutional power to comment on the evidence—a matter which was not mentioned in the Flores case. Here the word "tending" was not used, but the court merely informed the jury of the "purpose" for which the evidence was received, and the jury were given the usual instructions that they were the sole and exclusive judges of the weight, effect and value of the evidence, of the credibility of the witnesses, and of all questions of fact submitted to them, thus leaving them to determine for themselves whether the "purpose" of the evidence mentioned had been accomplished.

5. Appellants' fifth proposition is untenable. The instruction regarding evidence of Murietta's statement to the police properly informed the jury that it was not received in proof of the facts stated by him. It referred several times to "attempts by counsel for the defense to impeach him" and these parts of it are objected to, as carrying an implication of failure of the attempts and being a charge on the facts. In view of the court's power to comment on the evidence and its compliance with the constitutional requirement in this respect by giving the instructions mentioned in discussing the preceding point, we cannot find any error in this matter. The use of the word "attempt" does not necessarily imply failure, for many an attempt succeeds. (*People* v. *Pianezzi,* (1940) 42 Cal.App.2d 270, 279 [108 P.2d 685].)

6. Appellants' sixth proposition does not lead to a reversal. The appellants in their testimony accused police Officers Ullery, Didion and Winter of using force upon them for the purpose of compelling admissions or confessions by

them. The officers, as witnesses, denied these accusations. Evidence of statements by the nonappealing defendants was also given, and these defendants accused Officers Young and Lillywhite of using force to compel these statements. Regarding them the prosecutor said in his argument: "But the reason you won't hear police officers testify from the witness stand that they used force is because if such a thing would occur, if I sensed such a thing, I wouldn't use the confession. . . . However, as for Mr. Young and Mr. Lillywhite, I have worked with those gentlemen for many years during the time I have been in the office of the District Attorney, and if they didn't like their reputation, and believed they are the character of men that these defendants contend they are, I am sure they could have called some witnesses to testify to their bad reputation. But they didn't do that. I know those two gentlemen and I know the kind of officers they are. The other three, Ullery, Didion and Winter and whoever they were— I don't know them as well as I do the first two, Young and Lillywhite, because I have worked with them in other cases, and I have a right to rely upon their testimony." Appellants now contend that this argument constitutes misconduct. Undoubtedly, it is the precise sort of argument condemned as misconduct by the Supreme Court in *People* v. *Pantages*, (1931) 212 Cal. 237, 248, 249 [297 P. 890]. It was argued there, as it is here, that the misconduct was cured by an instruction to disregard the statement of the prosecutor. Upon this point the court said: "Although authorities are not lacking in their declaration of the law in substance that the effect of such prejudicial misconduct may be cured by an instruction to the jury to disregard the remark of counsel, nevertheless an exception to such general rule is noted where the misconduct is of such a character that it is reasonably clear that its harmful result could not have been obviated or remedied by an instruction to the jury to disregard it. . . . It is apparent that repeated acts of misconduct of the same tenor may present a situation radically different from a single isolated transgression of the same general nature; . . ." In that case "repeated acts" were involved; here we have only "a single isolated transgression." In making the objection here the deputy public defender said: "I don't think the District Attorney has any authority to refer to his own knowledge of any man or any

thing connected with the case . . . to build up a witness here by his own personal knowledge. I think counsel is going too far." Appellants' counsel made no objection. The court said: "I think your objection is well taken. It will be sustained and the jury will disregard any such statement of the District Attorney." In the instructions given at the close of argument, the court further directed the jury that "If any counsel, upon either side, have made any statements in your presence concerning the facts in the case, you must be careful not to regard such statements as evidence, and must look entirely to the proof in ascertaining what the facts are." These admonitions would ordinarily be sufficient to overcome such a statement as that made by the prosecutor here, and we see no reason to doubt that they had that effect here.

Moreover, it is obvious from what we have quoted of the prosecutor's argument, as well as the context not quoted, that he was speaking only of the charges that Young and Lillywhite had used force on certain defendants to compel confessions or admissions and his encomiums referred only to their character in that respect. The appellants in their testimony made no such charges against Young or Lillywhite; they referred to other officers. The charges of beating against the officers named were made by the other defendants, Moreno, Jorquez and Muro. The question whether admissions of the three defendants last named were obtained by force was not material to the cases of the appellants; and since none of the appellants had made any accusations of this sort against the officers whom the prosecutor commended in his argument, it is clear that such argument could not have affected the appellants' case to any considerable extent and that if there was any such effect it could be and was removed by the instructions.

In *People* v. *Berryman*, (1936) 6 Cal.2d 331, 337 [57 P.2d 136], the court stated two exceptions to the rule that where no objection is made to misconduct, or objection is made and sustained and the jury is properly admonished, the misconduct will not furnish grounds for a reversal. One exception is that stated in *People* v. *Pantages, supra*, (1931) 212 Cal. 237, 249 [297 P. 890], and already considered, and the other is "where the case is closely balanced and there is grave doubt of defendants' guilt and the acts of misconduct are such as to contribute materially to the verdict." Reading of the evidence here does not leave on us the impression that there is

such grave doubt of appellants' guilt as to make this exception operative; and, for the reasons above stated, it does not appear that the misconduct contributed materially to the verdict.

Other complaints are made of misconduct of the prosecutor but the misconduct complained of, where it amounted to that, was minor in character and the jury were instructed in each case to disregard it. We regard these instructions as sufficient to avert any ill consequences to appellants from such misconduct as appears.

The judgments and the orders denying a new trial are affirmed.

Shinn, Acting P. J., and Wood (Parker), J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied March 25, 1943.