[Crim. No. 4722. In Bank. Dec. 3, 1946.]

THE PEOPLE, Respondent, v. LEROY BOB, Appellant.

L. A. Mills for Appellant.

Robert W. Kenny, Attorney General, James O. Reavis, Deputy Attorney General, Chester E. Watson, District Attorney, and Bradford M. Crittenden, Deputy District Attorney, for Respondent.

CARTER, J.—Defendant Bob has been adjudged guilty of the crime of murder of the first degree and sentenced to pay the extreme penalty. His appeal is automatically before this court by virtue of the provisions of section 1239 of the Penal Code.

After his arrest Bob told the officers freely of the circumstances leading to the homicide, and at the trial he repeated his story on the witness stand.

It appears that in the early evening of November 16, 1945, Bob and an acquaintance named Johnson met in a pool hall in Stockton and decided to go out "hustling," which in the vernacular means "to roll a drunk, strong-arm somebody." According to the testimony of Bob, they walked by the Elks Club, where Johnson went in a doorway and picked up a piece of iron pipe. The two then continued walking until they noticed a Japanese man across the street talking to a boy. Johnson intruded upon this conversation and found that the Japanese, George S. Yoshioka, who had served in the United States Army, was inquiring where he could find some girls.

Johnson stated that he knew where girls were to be found. He and Yoshioka and Bob walked down the street. They paused near a hotel on South Center Street, and then rounded the corner of the building into a vacant lot. Bob stayed a few feet away. Johnson and Yoshioka talked awhile and then Johnson suddenly hit Yoshioka on the head with the iron pipe, repeating the blows until unconsciousness resulted. Bob went through Yoshioka's pockets and extracted a wallet. Johnson took Yoshioka's wrist watch.

Bob and Johnson then went to the hotel room of Johnson's wife, where Johnson proceeded to clean up and prepared to flee the state. The sum of $37, found in the wallet, was divided equally by the two men. Johnson also found a $50 bill which he did not mention to Bob. Bob went back into the street, met one Simmons, and told him of the crime. He and Simmons returned to Yoshioka and Simmons took Yoshioka's shoes. Soon thereafter Yoshioka's body was observed by a passer-by, and the police were notified. Yoshioka passed away in the hospital without regaining consciousness, the cause of death being a fractured skull. The bloodstained pipe was found on the ground near the spot where Yoshioka's head had rested, but its rusty surface gave forth no fingerprints.

Johnson was taken into custody in Texas and returned to California. On December 1, 1945, in the early morning, Bob was arrested for ''causing trouble'' in a cafe, and was booked as a suspect vagrant. When the police took him to the finger-printing desk, he there saw Johnson. This led to his voluntary confession of complicity in the robbery and murder of Yoshioka. He was questioned by an assistant district attorney in the presence of police officers and a court reporter, and the entire conversation was reduced to writing. Johnson was then brought in, and in the presence of the same officers and of Bob, his statement was taken in the same manner. It differed from the statement of Bob in this: That whereas Bob accused Johnson of being the man who picked up the pipe, lured the Japanese to the lot, and struck the fatal blows, Johnson claimed that he was the bystander and that it was Bob who procured the pipe, talked and walked with the victim, and then killed him. At the close of the questioning of Johnson, Bob stated that it was Johnson who used the pipe. A colloquy then ensued between Johnson and Bob, wherein each made accusations against the other. This was also re-

duced to writing and together with Johnson's statement was read in evidence.

The two men were tried separately. On the trial of Bob his confession to the police was introduced in evidence. Johnson's statement contained the assertion that Bob struck the lethal blow. As above stated, that was denied by Bob. The balance of the statement was in accordance with Bob's confession and he did not deny it. Under those circumstances Johnson's statement was clearly hearsay evidence and was not admissible under any exception to the hearsay rule. (*People v. Simmons,* 28 Cal.2d 699 [172 P.2d 18].) The error in the admission of that evidence, especially the part to the effect that defendant struck the deadly blow is conceded by the prosecution, hence it has waived any claim to the sufficiency of defendant's objection to the evidence in the court below. "If the adverse party does not oppose the consideration of a question for want of an objection in the trial court, the point will often be considered waived, on the ground that the appellate court is not bound on its own motion to invoke the rule requiring objection to be made in the court below." (4 C.J.S., Appeal & Error, § 245.)

Moreover, under all the circumstances defendant's objection was sufficient. The record shows that when Johnson's statement was offered, defendant's counsel stated: "We object to any statement made by Johnson." Later defendant's counsel stated: "I believe *that Johnson could be brought here as a witness* and I renew my objection to this statement *inasmuch as he can be produced, and should be produced, to make his own statement before the jury* rather than relying upon his statement that was made some time ago, and his statement having been transcribed, the best evidence is from the lips of the witness, *let the jury see him and determine from his attitude* before the jury whether or not he is speaking the truth. This is certainly secondary evidence." [Emphasis added.] The court stressed the point (justifying its ruling of admissibility) after both objections, and on other occasions, that *if the statement was made in the presence of defendant it would be admissible.* After the court made such remarks following the last mentioned objection, defendant's counsel stated: "This [referring to Johnson's statement made out of court] is not a judicial proceeding. It's an ex parte affair, and *we have a right to have him produced,* and that evidence certainly might be of very much greater advantage

to the jury *in determining whether he is speaking the truth* than merely the recital of a statement that's been reduced to writing by somebody else." [Emphasis added.] The proper ground of objection to the evidence would have been that it was hearsay, and ordinarily that ground should be specified in the objection, but it is manifest that although the word "hearsay" was not used in giving the grounds of the objections, the whole tenor of them was plainly directed to that ground. ▮ The essence of the hearsay rule is that the witness is not in court and subject to cross-examination and is not available for the jury to judge his credibility. Those were the very things urged by defendant's counsel. That the court understood that the objection was grounded in hearsay is evidenced by its remarks about the presence of defendant when the statements were made. It is many times erroneously assumed that the mere presence of the other party when a statement is made will erase its hearsay character. The presence of the other party is ordinarily no test. It becomes important only when the statement is offered for the purpose of showing an admission of guilt by defendant. It is apparent from the remarks of the court that even if hearsay (using that word) had been specified as the ground of the objection the trial court would have overruled it. It is true that the particularly mischievous part of Johnson's statement (that Bob rather than he struck the blow) was not pointed out by defendant's objection but it is clear from the attitude and expressed view of the court that it would have overruled even a specific objection.

▮ In the light of the rules applicable to the necessity of making objections to evidence in the trial court to save the point on appeal, the objections made should be held to state sufficiently the ground of the objection and the part of the evidence to which objection was made. Notwithstanding the rule that the specific ground for an objection must be given and the particular portion of evidence which is inadmissible must be pointed out where other parts are admissible, "technicalities should be liberally viewed when urged against a defendant in a criminal case. And the mere fact that the objection could have been made in better form will not justify a refusal to consider it, where the intention of the defendant could not be misunderstood. So also if it is evident from the discussion over an objection between the court and counsel that another ground of objection perfectly obvious from the

nature of the question, would have been overruled if made, this ground will be considered on appeal." (8 Cal.Jur. 503.) (See *People* v. *Boggess*, 194 Cal. 212 [228 P. 448]; *People* v. *Shattuck*, 109 Cal. 673 [42 P. 315]; *People* v. *Yee Fook Din*, 106 Cal. 163 [39 P. 530]; *People* v. *Darby*, 64 Cal.App.2d 25 [148 P.2d 28]; *People* v. *Converse*, 28 Cal.App. 687 [153 P. 734].) It is said in *People* v. *Yee Fook Din, supra,* at page 166: "Appellant could certainly have made his objections in better form, and could thus have brought here a record pre- senting his point in a clearer light; but *technicalities should be liberally viewed when urged against a defendant in a criminal case.*" [Emphasis added.] It is aptly said in *People* v. *Converse, supra,* at page 691, where the objection of immaterial matter rather than *hearsay* was held sufficient: "It will not do to say that the ruling complained of was free from error because counsel for the defendant did not see fit to object specially upon the ground that the question called for testimony which in addition to being immaterial was in- competent because hearsay. Objections to questions calling for inadmissible testimony are designed and are required for the purpose of directing the attention of the trial court and of opposing counsel to the particular vice of the testimony sought to be elicited by the question; and it is the general rule that the efficacy of an objection is dependent upon the precision with which it is made. In the present case, however, *upon its face the character of the question must have fully apprized the trial court of the hearsay nature of the testimony called for; and it is evident by the discussion of the objection in- dulged in between court and counsel that an objection upon the ground of hearsay would have been overruled* upon the theory that, notwithstanding its hearsay character, such tes- timony was admissible upon redirect examination as a ma- terial and undisclosed portion of a conversation called for and narrated upon cross-examination. Obviously therefore it would have been useless to have specified incompetency as an additional ground of objection; and this perhaps was one of the reasons why counsel for defendant failed to do so." [Emphasis added.] In *People* v. *Boggess, supra,* at page 232, it is said: "While it is true ordinarily that an objection to evidence must be sufficiently specific to inform the court of the scope of the objection, nevertheless, where the record shows, as it does in the instant case, that all the parties, in- cluding the court, must have understood the purpose of the

objection, it will not be said that the objection failed of its purpose." Such is equally true in the case at bar. The court said in *People* v. *Darby, supra,* at page 33: "We do not feel inclined to deprive defendant of his right to demand that he be tried with competent evidence because of the oversight of his counsel in the midst of a difficult trial to remember that he should add the word, hearsay, to the statement of his objection."

Viewing what transpired in the trial court at the time the Johnson statement was offered in evidence in the light of the foregoing authorities, there is little foundation for the contention that no proper objection was made to the portion of the Johnson statement which was denied by the defendant, on the specific ground that said statement was not admissible as an accusatory statement because of such denial, and that the trial court was not required to segregate the portions of the statement which might have been excluded, and was never given an opportunity or called upon to rule on the question presented for the first time on appeal. While the objection could have been more specific, we think it was sufficient to call to the attention of the trial court the inadmissible character of the portion of Johnson's statement which was denied by defendant, and the trial court should have excluded that portion of said statement. The fact that defendant admitted the truth of a portion of Johnson's statement did not render the entire statement admissible in the face of the objection.

At the time of the crime here involved, defendant was only nineteen years of age. From the evidence here adduced (other than the objectionable evidence) it seems more probable that Johnson, who participated with defendant in the commission of the crime, struck the blows which caused the death of Yoshioka. Johnson was tried separately and a jury, after finding him guilty of murder of the first degree, fixed his punishment at life imprisonment. Johnson was several years older than the defendant, and it could be inferred that he was the master mind in conspiring to commit as well as execute the commission of the crime. It cannot be doubted that the error in admitting in evidence the hearsay statement of Johnson was prejudicial to defendant in view of the fact that Johnson's punishment was fixed at life imprisonment and the defendant's punishment was fixed at death. In fact the vital issue, and the only one over which there could be any contro-

versy, was whether defendant should be imprisoned for life or suffer the death penalty. His participation in the commission of the crime was admitted by him. And since the murder was committed in the perpetration of a robbery, it cannot be denied that it was murder of the first degree. But the jury might well have fixed defendant's punishment at life imprisonment had the hearsay declaration of Johnson not been admitted in evidence. This declaration placed before the jury the only statement that defendant struck the blows which caused Yoshioka's death. Since the only other evidence shows that it was Johnson and not defendant who struck the fatal blows, and Johnson's punishment was fixed at only life imprisonment, we are unable to escape the conclusion that the admission in evidence of the hearsay statement of Johnson was error, that such error was prejudicial and that defendant should be granted a new trial.

The Legislature of California has taken extraordinary precaution to safeguard the rights of those upon whom the death penalty is imposed by the trial court, by providing for an automatic appeal to the Supreme Court of this state in all such cases (Pen. Code, § 1239) and enjoining upon this court an examination of the record and the preparation of a formal opinion and decision from which it should appear that no miscarriage of justice has resulted. In view of this declared policy, and the fact known to this court that many capital cases are defended by counsel appointed by the court who may be inexperienced in the handling of criminal cases, it would seem appropriate for this court to take a liberal view of the technical rules applicable to criminal cases generally (see *People* v. *Yee Fook Din, supra,* 166) and examine the record with the view of determining whether or not in the light of all that transpired at the trial of the case a miscarriage of justice has resulted.

The judgment and order denying a new trial are reversed.

Gibson, C. J., Traynor, J., and Schauer, J., concurred.

SHENK, J.—I dissent.

The judgment of reversal is placed on the tenuous ground that there was prejudicial error in admitting in evidence those portions of Johnson's lengthy statement which contained declarations accusing defendant of wielding the lethal weapon because at the conclusion of Johnson's statement Bob denied

being the leading actor in this atrocious drama participated in by both men. The circumstances attending the felonious killing were freely related and admitted by Bob except as noted. Thus the sole ground for discovery of error is the introduction in evidence of the denied accusations by Johnson made in the presence of Bob that the latter procured and wielded the weapon.

The two men were tried separately. On the trial of Bob his confession to the police was introduced in evidence. Johnson's statement made in the presence of Bob was also read, together with the colloquy between the two men. No ground of objection to the admission of the statement was at first specified. Counsel merely stated, ''We object to any statement made by Johnson.'' The court then asked the witness (who reported the conversations), ''Well, was it in the presence of the defendant?'', and, upon receiving an affirmative reply, stated, ''Very well. The objection is overruled.'' (See Code Civ. Proc., § 1870, subd. 3.) After the reading of the Johnson statement was commenced defense counsel interposed an objection upon the ground that Johnson should be brought in as a witness and that the reading of his prior and transcribed statement was not the best evidence. In overruling the objection on this ground the court said: ''Any statement he [Johnson] made that was not made in the presence of this defendant would certainly not be admissible. This is a statement, a conversation, in the presence of the defendant in which the defendant took part. . . .''

On oral argument in this court Bob's counsel again contended that the Johnson statement was inadmissible on the ground that Johnson was in the county jail and could have been called as a witness.

There is no indication in the record that any declaration of Johnson was objected to on the ground that it was denied by Bob. (See *People* v. *Simmons,* 28 Cal.2d 699 [172 P.2d 18], and cases therein cited; 8 Cal.Jur. p. 102, § 196; 20 Am.Jur. p. 483, § 570.) Most of Johnson's declarations were admissible even over any objection by reason of not having been denied. Bob's statement disclosed participation with Johnson in the commission of the crime. He corroborated most of the incriminatory accusations made against him by Johnson and some of them he expressly admitted. The possibility of the rejection of a portion of the Johnson statement because it con-

tained the accusations that Bob enticed the victim and struck the fatal blow, which Bob denied, was not brought to the attention of the trial court. There was no objection on that ground, no motion to strike, and no request for an instruction that the jury disregard the accusations which Bob denied, namely, the declarations that Bob lured the victim and wielded the lethal weapon. The trial court was not required on its own motion to segregate the portions of the statement which might have been excluded by appropriate objection from the clearly admissible portions. The trial court was never given the opportunity or called upon to rule on the question now presented for the first time on appeal.

The question whether some portion of the Johnson statement might have been excluded, had timely objection been made, is not a question for consideration on this appeal. It is the law that a reviewing court will not consider an objection to the admission of evidence unless the ground of the objection has been specified in the trial court. (*People* v. *Schafer,* 161 Cal. 573, 578-9 [119 P. 920]; *People* v. *Farmer,* 77 Cal. 1,. 7 [18 P. 800]; *People* v. *Duran,* 57 Cal.App.2d 363, 370 [134 P.2d 305]; *People* v. *Wignall,* 125 Cal.App. 465, 474-5 [13 P.2d 995]; *People* v. *Jones,* 12 Cal.App. 129, 132 [106 P. 724]; 8 Cal.Jur. p. 503, § 517.) Therefore, despite the concession of the attorney general to the contrary, there was no error in the trial court's ruling on the admission of the statement.

By his own confession Bob was a participant in an atrocious murder committed in the course of robbery of the victim. This could only be murder of the first degree (Pen. Code, § 189). The record conclusively establishes Bob's guilt as to that degree of murder. His guilt is established regardless of which of the two men struck the fatal blow. (*People* v. *Whitson,* 25 Cal.2d 593 [154 P.2d 867]; *People* v. *Gomez,* 209 Cal. 296, 298-9 [286 P. 998]; *People* v. *Arnold,* 199 Cal. 471 [250 P. 168]; *People* v. *Matthew,* 194 Cal. 273, 278-9 [228 P. 424]; *People* v. *Bringhurst,* 192 Cal. 748 [221 P. 897]; 4 Cal.Jur. 10-Yr.Supp. p. 557, § 39.)

No extenuating circumstance is shown. Bob admitted that he and Johnson started out with the intention to ''roll'' someone, that he knew Johnson had the pipe, and that he ''figured'' Johnson would use it. Each declared that no other person was involved in the affair. Regardless of which did the actual killing, they were the only persons responsible for the

perpetration of the crime. Assuming that Johnson completed the killing Bob took part in it and in the robbery of the fatally wounded, victim which ensued. Not only that but a short time afterward Bob returned to the scene and although the victim was still alive witnessed without remonstrance the taking of the murdered man's shoes by Simmons.

On the evidence the jury would not have been justified in returning any verdict other than that of murder of the first degree.

The jury was properly instructed with reference to its duties and responsibilities and to its right, in its discretion, to relieve this defendant of the extreme penalty. This the jury chose not to do. The fact that the confederate Johnson was so relieved on a separate trial and before another jury does not establish a miscarriage of justice in Bob's case. It is impossible to say what prejudices, because of the innocent victim's Japanese ancestry, may have crept into the jury box in Johnson's case to influence a verdict of imprisonment for life in that case. It is a matter of common report that at the time of the trial and because of the hostilities between our country and Japan this prejudice was so pronounced that juries in other cases rendered verdicts of not guilty for no apparent reason or excuse except that the victims were of the Japanese race. The innocent victim in this case was an ex-serviceman who had been wounded in active service in France as a member of the Armed Forces of the United States. It is obvious that no prejudice against him because of his race had any influence on the jury's action in the present case.

The judgment should be affirmed.

Edmonds, J., and Spence, J., concurred.