STEPHANIE GERULIS *vs.* NAPOLEON VIENS.

MARGARET LYONS *vs.* NAPOLEON VIENS.

ARTHUR J. O'BRIEN *vs.* NAPOLEON VIENS.

HELEN LYONS *vs.* NAPOLEON VIENS.

CATHERINE G. LYONS, ADMX. *vs.* NAPOLEON VIENS.

York.      Opinion October 14, 1931.

*Waterhouse, Titcomb & Siddall,*
*Kleber Campbell,* for plaintiffs.
*Hiram Willard,*
*William B. Mahoney,* for defendant.

SITTING: PATTANGALL, C. J., DUNN, STURGIS, BARNES, FARRINGTON, THAXTER, JJ.

FARRINGTON, J.    The five cases come before this court on general motion and on two exceptions.

The several actions arose out of the results of a collision occurring on July 20, 1930, in the town of North Kennebunkport, Maine, at a point between the City of Biddeford and Kennebunk. By agreement, the five actions were tried together at the January Term, 1931, of the York County Superior Court, and in each case a verdict was returned for the defendant.

All the plaintiffs were returning from Old Orchard Beach, Maine, to Worcester, Massachusetts, in a Ford sedan owned and operated by Arthur J. O'Brien, himself a plaintiff. While they were proceeding in a westerly direction, admittedly on their own side of the road, on what is known as State Highway No. 1, a three strip cement road, the O'Brien car was struck by an automobile operated by one Thomas Robida which was proceeding in an easterly direction on the same highway. Both cars were damaged, the O'Brien car being practically demolished. Phillip Lyons, one of the occupants of the O'Brien car, the administratrix of whose estate is one of the plaintiffs, was rendered unconscious and died later without regaining consciousness. All the other plaintiffs suffered painful injuries.

Without going into detail as to the evidence, it may briefly be stated that the plaintiffs' cases were based on the contention that the automobile driven by Thomas Robida, the car which struck the one in which the plaintiffs were riding, was hit by the defendant's automobile, negligently driven by him, in such a way as to force the car driven by Robida, and without negligence on his part, diagonally across the road and into the O'Brien car, thereby causing the damages recovery for which is sought in these several suits.

The contention of the defendant was briefly that he did not "cut in" and that he did not hit the Robida car, and that the first knowledge that he had of the accident was about a week after its occurrence.

In presenting his defense, the defendant offered as a witness one Conrad Schiller, who was proceeding in a Hudson car just behind the O'Brien car and in the same direction. Schiller testified that he "got a horn" and "saw a car going to pass me"; that he then saw a car, clearly the Robida car, moving in a direction opposite to his, "cut out of the opposite line and come directly across and hit the Ford in front of me," "hit the Ford head-on"; witness said he saw no car pass the Robida car; that he saw the Robida car come into contact with no car but the Ford.

Before Mr. Schiller was called to the stand as defendant's witness, one Linwood Carroll, a member of the State Highway Police, was called as a witness for the plaintiffs. On cross examination by the defendant's attorney, Mr. Carroll stated that he had talked

with Mr. Schiller. The evidence shows it was at the scene of the accident and shortly after it. He was permitted by the Court, against objection by plaintiffs' attorney, to answer the question, "Will you state what Mr. Schiller said there with reference to the Robida car cutting out of line and going across the road?" and the reply was, "Mr. Schiller said that the Robida car cut out of line and met a car on the middle lane and came over on the left hand lane to avoid hitting the car in the center *line*." To the admission of this evidence exceptions were seasonably reserved.

The court permitted the introduction of the evidence on the ground that, the plaintiffs being physically present, their silence or failure to deny the statement as to the manner or cause of the accident as made by Mr. Schiller to Mr. Carroll was an admission of its truth. This is clearly shown by the statement of the Court at the time that "as the case stands now, the plaintiffs were all present when the conversation was made against their interest." Immediately before this statement by the Court, the attorney for plaintiffs had said, "I don't know but it might be entirely out of order, but perhaps when the Court heard further testimony as to the condition of these several plaintiffs, with reference to their being present and bound by any conversation between this officer and outside parties, I think the Court will be in a better position to rule. I simply state that these three young ladies were seriously injured."

Mr. O'Brien had already testified. Later the other plaintiffs gave their testimony. Mr. Carroll had previously stated, in reply to a question on cross examination as to whether Mr. O'Brien was present at the time of the conversation with Mr. Schiller, that "He was around there, but I don't think he was present; no, Sir." And it is undisputed that Phillip Lyons was unconscious at the time.

In *Commonwealth* v. *Kenney*, 12 Met., 235, the Court said: "If a statement is made in the hearing of another, in regard to facts affecting his rights, and he makes a reply, wholly or partially admitting their truth, then the declaration and the reply are both admissible; the reply, because it is the act of the party, who will not be presumed to admit anything affecting his own interest, or his own rights, unless compelled to it by the force of truth; and the declaration, because it may give meaning and effect to the reply.

In some cases, where a similar declaration is made in one's hearing, and he makes no reply, it may be a tacit admission of the facts. But this depends on two facts; first, whether he hears and understands the statement, and comprehends its bearing; and secondly, whether the truth of the facts embraced in the statement is within his own knowledge, or not; and whether he is in such a situation that he is at liberty to make any reply; and whether the statement is made under such circumstances, and by such persons, as naturally to call for a reply, if he did not intend to admit it."

This language was approved in the case of *Thayer* v. *Usher*, 98 Me., 468, 471. ;Also in the case of *Pierce* v. *Goldsberry*, 35 Ind., 317, at page 321. To the same effect is *Schilling* v. *Union Road*, 77 App. Div., 74 (N. Y.), 78 N. Y. S., 1015; *Tinker* v. *N. Y.*, *Ontario & Western Ry. Co.*, 92 Hun., 269, 36 N. Y. S., 672; *Parulo* v. *Philadelphia & R. Ry. Co.*, 145 Fed., 664; *McCord et ux* v. *Seattle Electric Co.*, 46 Wash., 145, 89 Pac., 491, 493; and *Whitney* v. *Houghton*, 127 Mass., 527, where the Court said, "Such evidence is always to be received and applied with great caution, especially when the statements are made, not by a party to the controversy, but by a stranger. An admission by a party of the truth of statements made in his presence, by his silence, could not be implied or inferred, unless they were made under such circumstances as to call for a reply from him." To the same effect see *Moore* v. *Smith*, 14 Serg. & R. (Pa.), 388.

In the cases at bar, the statement made by Schiller, a stranger, to Carroll was not made under circumstances which reasonably called upon plaintiffs for any reply, even if they had heard it. It is not claimed or in evidence that the statement was directed to any of the plaintiffs. There is not only no direct evidence in the case to show that any one of the plaintiffs heard any conversation between Carroll and Schiller or that they even saw them engaged in conversation, but the evidence goes far to negative such a conclusion. Mr. Schiller himself did not testify as to any such conversation. Mr. Carroll said, "They were all standing around there. I couldn't say whether any heard the conversation or not." It was "right side of the cars." At this point, the Court said, "You have now laid the foundation if you want to ask the question," refer-

ring to the question and answer covered by the exception under consideration.

The situation existing at the time of the conversation, as disclosed by the record, was one of confusion and traffic congestion at the place of accident. The evidence as to the condition of the several plaintiffs shows that Mr. O'Brien had two fractured ribs, a deep cut below his knee and bruises about his face and body, injuries sufficiently serious to keep him from his work thirteen weeks. Helen Lyons, herself painfully injured, had been holding her unconscious and bleeding brother in her arms until he was laid on the shoulder of the road, where he remained until all were taken to the hospital. Margaret Lyons suffered a sprained ankle, a badly strained back, bone bruises on both legs and on her hip and two cuts on her elbow. Immediately after the accident she was sick and vomiting, and spitting blood. Stephanie Gerulis, fiancee of Phillip Lyons, was suffering from an injury to her left leg which required two stitches. She had fainted from the shock of the accident but recovered consciousness shortly. During all the time and clearly while the alleged conversation between Carroll and Schiller was taking place, Phillip Lyons was lying unconscious by the roadside.

Under such circumstances as these, we are not ready to say that a person is bound to give his attention to statements made by a person in his presence relating to how an accident happened. Indeed it can not fairly be said that he is in a mental condition to have comprehended the bearing of such statements if he heard them.

"We know of no case, and can find none, which holds that, under such circumstances, a party seriously injured and suffering from shock is bound at his peril to give heed to every remark that is made by a person in his presence relating to the occurrence which produced those results." *Schilling* v. *Union Ry.*, supra.

We are of the opinion that, under the circumstances and conditions existing in the cases before us at the time the alleged statement was made by Schiller to Carroll, evidence of that statement should not have been admitted. It was clearly prejudicial and may have furnished the additional weight in the scales which caused them to tip, it may have been ever so slightly, in favor of the defendant when the jury weighed the evidence.

The admission, before Schiller was called to the stand by the defense, of the statement made by Schiller to Carroll could not have failed to strengthen his testimony in the minds of the jury on the basis that his story on the witness stand was the same that he told to Carroll at the time of the accident.

The exception must be sustained.

The other exception covering a somewhat similar situation, and the general motion, need not be considered.

*Exception sustained.*