**STATE of Maine**

v.

**Donna McKENNEY.**

Supreme Judicial Court of Maine.

Argued March 18, 1983.

Decided April 29, 1983.

Paul D. Mathews (orally), Robert VanWyck, Asst. Dist. Attys., Wiscasset, for plaintiff.

Dunlap & O'Brien, Mark E. Dunlap (orally), Portland, for defendant.

Before McKUSICK, C.J., and GODFREY, NICHOLS, CARTER, VIOLETTE and WATHEN, JJ.

GODFREY, Justice.

The defendant, Donna McKenney, appeals her conviction of theft by unauthorized taking or transfer (Class E), 17–A M.R. S.A. § 353 (1983),[1] after a jury-waived trial in Superior Court, Lincoln County. On appeal she argues (1) that there was insufficient evidence to establish her guilt and (2) that the Superior Court erred in refusing to strike hearsay testimony given by a prosecution witness. We affirm the judgment.

The testimony at trial disclosed that on February 10, 1982, at about 2:45 p.m., the defendant and her brother, Robert Creamer, entered Wiscasset Hardware Store. Just before they entered, Blaine Cram, a store employee, had removed a Bearcat model 210 scanner from its box and was beginning to "program" the scanner when he was interrupted by arrival of a customer named Hume, who wanted his television set repaired while he waited. The defendant and Creamer remained in the store for ten to twenty minutes. During that time, they were the only customers in the store except Hume, who remained with Cram in the service area. For all of that time Creamer was looking at television sets in the television area of the store with the assistance of Mitchell Ross, a store salesman.

Moments after the defendant and Creamer left the store Cram discovered that the Bearcat scanner was missing. The defendant had spent much of her visit in the scanner area and was the only customer in that area when the scanner disappeared.

---

1. 17–A M.R.S.A. § 353 defines theft by unauthorized taking or transfer as follows:

1. A person is guilty of theft if he obtains or exercises unauthorized control over the property of another with intent to deprive him thereof.

2. As used in this section, "exercises unauthorized control" includes but is not necessarily limited to conduct heretofore defined or known as common law larceny by trespassory taking, larceny by conversion, larceny by bailee and embezzlement.

Both Hume and Creamer spent the whole time talking with store employees elsewhere in the store.

The scanner display was on open shelving, set back four to five feet behind a gate with a bell. Neither Cram nor Ross saw the defendant open the gate or heard the bell tinkle. However, the bell is easily muffled, and for a brief time, neither Cram nor Ross could see the defendant when she was near the gate.

The defendant kept her long, loose-fitting winter coat buttoned while she was in the store, although the temperature inside was sixty-eight to seventy degrees. She kept her hands in her coat pockets. When she produced the coat at trial one pocket was torn. She could not remember when the tear occurred.

The scanner itself was about ten to twelve inches long, seven or eight inches deep, and four or five inches high, and it weighed about two pounds. The defendant remained in the store about ten minutes after the short interval when the two employees had lost sight of her. At one point during the ten minutes, she swore at David Stetson, one of the owners of the store, who had been watching her. When she rejoined Creamer in the television area just before the two left, Ross did not notice signs of anything concealed under her coat.

The defendant returned with Creamer and her husband fifteen to thirty minutes later, looking for David Stetson, who had been in the store during the latter part of her first visit. By then, a policeman, Officer Drake, had arrived. The defendant again railed at Stetson. She went outside with Officer Drake, who searched her car with her permission. The scanner was never recovered.

The defendant took the stand and denied any wrongdoing. She said she visited the store, accompanied by her brother, to purchase a television set for her sister and some speakers for herself. She described a bizarre encounter with Stetson fifteen years earlier, for which she said he still held a grudge against her. Stetson denied knowing of any such incident.

The disputed evidentiary ruling came in the middle of the trial while Mitchell Ross was testifying for the state on direct examination. In the course of a long, discursive and partly non-responsive answer to a question by the prosecutor, Ross said that Creamer, the defendant's brother, had said that he had to "go cash a check and he would be right back to pay—to pick up the TV set." The following discussion ensued:

Q [PROSECUTOR]: Who is—if I could ask, who is "he"? Because it may be objectionable.

A The gentleman that was with her, Mr. Creamer.

[DEFENSE COUNSEL]: I would object to anything he said and move to strike.

THE COURT: It would be overruled. She is a named defendant in this matter and it was stated to have been said in her presence.

Ross's testimony about Creamer's statement remained immaterial until near the end of the trial, when the defendant took the stand. In cross-examination, the prosecutor asked her several questions about who was going to pay for the television set and by what means. Defendant answered, in effect, that she was going to pay for the set with $2,000 she had in cash on her person, inherited from her mother. The earlier testimony of Ross, that Creamer said he was going out to the bank to get money to pay for the set, had some tendency to impeach defendant's testimony about her plans to pay for the set. Creamer himself did not testify at the trial.

At the close of the state's case and again at the close of all evidence, defense counsel moved for a judgment of acquittal.[2] The court denied both motions and found the defendant guilty.

2. The defendant's husband, David McKenney, was also a defendant at the trial. The court found him not guilty at the close of evidence.

## I. *Sufficiency of the evidence*

When a conviction is challenged on the ground of insufficiency of the evidence, the Law Court will set the conviction aside only if, after viewing the evidence in the light most favorable to the prosecution, no rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *State v. Van Sickle,* 434 A.2d 31, 34 (Me.1981); *State v. Theriault,* 425 A.2d 986, 988 (Me.1981).

The state's evidence was circumstantial. As the defendant concedes, a conviction based on circumstantial evidence is not for that reason less conclusive. *State v. LeClair,* 425 A.2d 182, 184 (Me.1981). Instead, she contends that the evidence was simply inconsistent with her guilt. The opportunity to take the scanner, when both employees lost sight of her, arose early in her visit. She says that a shoplifter would not have lingered in the store another ten minutes, and certainly would not have confronted the store owner, drawing attention to herself. She also emphasizes that store employee Ross saw no sign of anything concealed under her coat.

Nevertheless, the trial court could have rationally found the defendant guilty beyond a reasonable doubt. Considering the evidence in the light most favorable to the state, the court could have concluded that the scanner was indeed stolen; that among the shoppers in the store when the scanner disappeared, only the defendant had had the opportunity to steal it; and that she had concealed it under her coat.

## II. *Refusal to strike testimony*

The Superior Court overruled the defendant's motion to strike the testimony of Ross because defendant was "a named defendant in the matter and it was stated to have been said in her presence." The court seems to have regarded Creamer's statement of his own intentions, as reported by Ross, as an adoptive admission by the defendant and therefore not hearsay because of M.R.Evid. 801(d)(2)(B).[3] On appeal, the defendant argues that the state failed to demonstrate at trial that she manifested her adoption of the statement.[4]

At the threshold, the question is presented whether, if the trial justice did err in refusing to strike the testimony in question, the error was preserved for review on appeal. Even if the testimony was improperly admitted, the fact that defense counsel objected at trial and moved to strike it does not necessarily preserve the error on appeal. An objection or motion to strike must state the specific ground of objection if the specific ground is not apparent from the context. M.R.Evid. 103(a)(1). The overruling of a general objection preserves nothing for review unless it clearly appears that the evidence was inadmissible for any purpose whatsoever. *State v. Flood,* 408 A.2d 1295, 1298 (Me.1979); *State v. Kelley,* 357 A.2d 890 (Me.1976); 3 Glassman, *Maine Practice* § 51.2, at 425 (1967).

The specific wording of the defense counsel's motion to strike was: "I would object to anything he said and move to strike." The defendant urges us to characterize that motion as specific, arguing that such a motion or objection is commonly understood to refer to hearsay. In the alternative, she contends that the hearsay basis of the motion was apparent from the context. The defendant's first argument is not persuasive. Perhaps the wording of her trial counsel's motion serves as a hearsay objection in the courtroom practice of some lawyers, but it is an insufficient basis for treating the motion as specific. It is true that words of art are not necessary to make an objection. There are a number of suitable ways to object to hearsay. *See* Ladd, *Objections, Motions and Foundation Testimony,* 43 Cornell L.Q. 543, 551 (1958). The objection must be one which "pointedly dis-

---

**3.** Under 801(d)(2)(B) a statement is not hearsay if it is offered against a party and is a statement of which she has manifested her adoption or belief in its truth.

**4.** The defendant has never challenged the testimony in question as irrelevant or as not responsive to the question asked.

closes the vulnerable quality of the proof or the character of the incompetence." *Id.* at 550–51. The defendant's objection fell short of that standard.

■ The defendant's second argument is more convincing. The requirement that objections be specific serves two purposes: to inform the judge of the issue raised and to give the adversary an opportunity to remedy the defect, if possible. *McCormick on Evidence* § 52, at 115 (E. Cleary 2d ed. 1972); *accord* Field & Murray, MAINE EVIDENCE § 103.2 (1976). In the present case, both the judge and opposing counsel were aware of the hearsay basis for the objection. Indeed, it was the state's counsel who first pointed out that the testimony might be objectionable. Moreover, the court's explanation in overruling the objection—that the disputed statement was made in the defendant's presence—made clear that an objection specifying hearsay would have been overruled. In such a situation, "it would be hypertechnical to rule that appellate scrutiny was precluded because appellant had not stated the hearsay basis of [her] objection and motion." *State v. Robinson,* 403 A.2d 1201, 1203 (Me.1979); *see People v. Bob,* 29 Cal.2d 321, 175 P.2d 12 (1946); *McCormick, supra,* at 115. If the trial justice erred in refusing to strike the testimony in question, the error is preserved for review.

■ According to the record, when Creamer made the out-of-court statement described by Ross, the defendant was present and said nothing in response, leaving the store with Creamer immediately afterward. Under M.R.Evid. 801(d)(2)(B), the burden of proof was on the state, as proponent of the evidence, to show that the defendant intended to adopt Creamer's statement. *State v. Elwell,* 380 A.2d 1016, 1020–21 (Me.1977); Field & Murray, *supra,* § 801.5.

■ Silence may be a tacit admission of facts stated in one's hearing in circumstances such as naturally call for a reply if no admission is intended. M.R.Evid. 801 Advisers' Note, citing *Gerulis v. Viens,* 130 Me. 378, 156 A. 378 (1931); *accord* Field & Murray, *supra.* The mere fact that a nondeclarant is present when a statement is made is insufficient, however, to support a decision that the nondeclarant adopted the statement. *Elwell,* 380 A.2d at 1020 (dictum); *cf. State v. Anderson,* 409 A.2d 1290, 1299 (Me.1979) (defendant's actions following his silence indicated adoption). In the circumstances, Creamer's statement that he would return for the television set after cashing a check did not naturally call for a reply. The state did not meet its burden.

Although the trial justice erred in treating the testimony in question as an adopted admission, he was nevertheless correct in refusing to strike it on hearsay grounds. Rule 803 of the Maine Rules of Evidence explicitly provides, among other things, that a statement of the declarant's then existing state of mind, such as his intent or plan, is not excluded by the hearsay rule, even though the declarant is available as a witness.[5] Ross's testimony recounted Creamer's statement of his intent and plan for obtaining the money to pay for the television set. Under Rule 803, it was plainly not excludable as hearsay.

The entry is:

Judgment affirmed.

All concurring.

---

**5.** M.R.Evid. 803(3) provides as follows:

> The following are not excluded by the hearsay rule, even though the declarant is available as a witness:
>
> . . . .
>
> (3) *Then existing mental, emotional, or physical condition.* A statement of the declarant's then existing state of mind, emotion, sensation, or physical condition such as intent, plan, motive, design, mental feeling, pain, and bodily health, but not including a statement of memory or belief to prove the fact remembered or believed unless it relates to the execution, revocation, identification, or terms of declarant's will.