STATE of Maine

v.

Kim SNOW.

Supreme Judicial Court of Maine.

Argued May 2, 1983.

Decided Aug. 31, 1983.

Michael E. Povich (orally), Dist. Atty., Ellsworth, for plaintiff.

Foster Law Offices, Mark A. Beede (orally), Ellsworth, for defendant.

Before McKUSICK, C.J., and GODFREY, NICHOLS, ROBERTS, CARTER* and WATHEN, JJ.

WATHEN, Justice.

After a jury trial in Superior Court (Hancock County), defendant was convicted of manslaughter (17–A M.R.S.A. § 203 (1983)) and for operating a motor vehicle while under the influence of intoxicating liquor (29 M.R.S.A. § 1312–B (Supp.1982–83)). On appeal, he assigns nine points of error. Upon careful consideration of all, we deny his appeal.

On June 21, 1981, at approximately 1:00 p.m., defendant arrived at the home of decedent George Christy. He brought with him a six-pack of beer, which he consumed between 1:00 p.m. and 4:30 p.m. Christy's wife testified at trial that when she left for work at approximately 4:30 p.m., defendant, although not drunk, was not sober.

* Carter, J., sat at oral argument and participated in the initial conference but resigned before this opinion was adopted.

George Christy, on the other hand, had been drinking since Thursday, June 18, and was drunk.

At approximately 5:00 p.m., defendant and Mr. Christy were involved in an automobile accident, in defendant's car, while heading in a southerly direction on Route 15 in the town of Sedgwick. Defendant claimed to have swerved to avoid hitting a dog or deer. An investigation of the accident revealed that the vehicle, while coming around a right-hand curve, left the road at a 30-degree angle from a point 1 to 1½ feet over the center line, skidded sideways approximately forty feet, rolled over twice, and came to rest in an upright position some 16 feet from the road. All told, the vehicle rolled over a distance of 117 feet, 6 inches. Defendant received cuts on the head, but was able to extricate himself from the vehicle. Mr. Christy had to be removed by emergency personnel, and was found to have incurred a complete fracture dislocation of the spinal cord.

State Trooper Setler arrived at the scene of the accident approximately 15 minutes after it had occurred. Other passersby had arrived earlier. In response to a general inquiry by Trooper Setler as to who had been driving, defendant acknowledged that he had. Defendant appeared unsteady on his feet, had bloodshot eyes, and smelled of alcohol. An open bottle of alcohol and cups were observed in defendant's car at the scene of the accident. Trooper Setler then arrested defendant for operating while under the influence. Setler twice advised defendant of his *Miranda* rights and also advised him of his rights under Maine's implied consent law (29 M.R.S.A. § 1312). Defendant refused to take a blood alcohol test and was verbally abusive to the trooper.

Mr. Christy was taken first to the Blue Hill Hospital and then to the Eastern Maine Medical Center in Bangor. The fracture of his spine rendered Mr. Christy, then thirty one years old, a virtual quadriplegic. That injury resulted in the decedent having paralysis of all the muscles involving the chest wall that were responsible for respiration. Shortly after admission to the hospital, Mr. Christy developed pneumonia from which he died on September 7.

We address defendant's contentions on appeal in the order in which he had presented them.

## I.

Defendant first argues that the court erred in denying his motion to arrest judgment because Count I of the indictment did not properly charge the offense of manslaughter (17–A M.R.S.A. § 203)[1] so as to apprise him of the essential facts.[2]

■ Relying upon *State v. Houde,* 150 Me. 469, 114 A.2d 366 (1955), defendant argues that the indictment should have specified the manner in which his operation

1. 17–A M.R.S.A. § 203 provides:

   § 203. *Manslaughter*

   *1.* A person is guilty of manslaughter if he:

   A. Recklessly, or with criminal negligence, causes the death of another human being; or

   B. Causes the death of another human being under circumstances which would otherwise be murder except that the actor causes the death while under the influence of extreme anger or extreme fear brought about by adequate provocation.

   *2.* For purposes of subsection 1, paragraph B, provocation is adequate if:

   A. It is not induced by the actor; and

   B. It is reasonable for the actor to react to the provocation with extreme anger or extreme fear, provided that evidence demonstrating only that the actor has a tendency towards extreme anger or extreme fear shall not be sufficient, in and of itself, to establish the reasonableness of his reaction.

   *3.* Manslaughter is a Class C crime if it occurs as the result of the reckless or criminally negligent operation of a motor vehicle; otherwise, manslaughter is a Class A crime.

2. Count I stated:

   That on or about the twentieth day of June, 1981, in the County of Hancock and State of Maine, *KIM SNOW did recklessly or with criminal negligence, cause the death of GEORGE CHRISTY as the result of the reckless or criminally negligent operation of a motor vehicle.*

was reckless. *Houde* held that a complaint charging the operation of a motor vehicle "in a reckless manner" did not sufficiently inform the accused of the nature and cause of the accusation of the offense of reckless driving. (29 M.R.S.A. § 1311 (1978) (repealed 1981, c. 468 § 4). Defendant contends that since "reckless operation" is a constituent element of the charge of manslaughter, *Houde* requires that the indictment specify the precise manner in which his operation was reckless. An examination of *Houde* and its progeny, *see e.g., State v. Scott,* 317 A.2d 3 (Me.1974); *State v. White,* 280 A.2d 810 (Me.1971), would suggest that in those cases in which the generic description of the conduct is identical with the ultimate fact required for conviction, a more exacting pleading requirement has been imposed. Defendant now seeks to extend the rationale of *Houde* to the crime of manslaughter as charged. Such a result, however, is inconsistent with well settled constitutional doctrine, and to the extent that *Houde* would suggest such a result, we would overrule it.

We have repeatedly held that a charging instrument must be interpreted in a common-sense manner and must not be subjected to arbitrary or overly technical tests such as were applied at common law. *See State v. Carter,* 444 A.2d 37, 39 (Me. 1982). Generally, "a charging instrument passes constitutional scrutiny if it contains such plain, concise, and definite allegations of the essential facts constituting the offense as shall adequately apprise a defendant of reasonable and normal intelligence of the act charged, enabling him to defend himself and, upon conviction or acquittal, to make use of the judgment as the basis for a plea of former jeopardy, should the occasion arise." *Carter,* 444 A.2d at 39. Moreover, a charging instrument which follows precisely the statutory language, understood according to its natural import, is an appropriate method of criminal pleading where the statute sufficiently sets out the facts which constitute the crime. *State v. Gordon,* 437 A.2d 855, 857 (Me.1981); *State v. Saucier,*

421 A.2d 57, 58 (Me.1980); *State v. Holt,* 391 A.2d 822, 824 (Me.1978).

We find that the indictment, as set forth, was sufficient to apprise defendant of the crime charged.

## II.

Defendant next argues that there was no evidence establishing that he was either reckless or negligent in operating his motor vehicle at the time of the accident. He maintains that the only relevant evidence pertaining to his operation of the car was that he had been under the influence of alcohol.

When a conviction is challenged on the ground of insufficiency of the evidence, the Law Court will set the conviction aside only if, after viewing the evidence in the light most favorable to the State, no rational finder of fact could have found the essential elements of the crime beyond a reasonable doubt. *State v. McKenney,* 459 A.2d 1093, 1096 (Me.1983). A conviction based on circumstantial evidence is not for that reason any less conclusive. *Id.* In the present case, we conclude that based upon the evidence adduced at trial, the jury could have found beyond a reasonable doubt that defendant's operation of his motor vehicle amounted to a conscious disregard of a risk or a failure to be aware of a risk, constituting "a gross deviation from the standard of conduct that a reasonable and prudent person would observe in the same situation." 17–A M.R.S.A. §§ 35(3), 35(4) (1983). Given the distance that defendant's vehicle remained out of control, the jury could logically have inferred that defendant was recklessly or negligently operating his automobile, either too fast for the condition of the road or too fast for his state of intoxication.

## III.

Defendant argues that the court erred in refusing to instruct the jury as to proximate cause under the doctrine of *State v. Hamilton,* 149 Me. 218, 239, 100 A.2d 234,

244 (1953).[3]  Defendant reasons that since the jury could have considered his conduct in operating under the influence as evidence of the element of recklessness or negligence, and since such conduct is *malum prohibitum,* the State must establish proximate cause.

Defendant's argument is in error.  This Court has previously acknowledged the abrogation of the common law concept of involuntary manslaughter resulting from the commission of an "unlawful act" and the associated doctrine of causation as set forth in *Hamilton.  See State v. Pray,* 378 A.2d 1322 (Me.1977).[4]  The present criminal code provides:

> Unless otherwise provided, when causing a result is an element of a crime, causation may be found where the result would not have occurred but for the conduct of the defendant operating either alone or concurrently with another cause, unless the concurrent cause was clearly sufficient to produce the result and the conduct of the defendant was clearly insufficient.

17–A M.R.S.A. § 33 (1983).  *See also State v. Crocker,* 431 A.2d 1323, 1325 (Me.1981).

The presiding justice instructed the jury in accordance with the language of the statute.  Section 33 expressly imposes limitations on causative responsibility and imposes standards similar to the common law standards of proximate cause.  Under section 33, when the defendant's conduct operates in conjunction with a concurrent causative condition, the State must prove beyond a reasonable doubt not only that the result would not have occurred but for the conduct of the defendant, but also that the concurrent cause was not alone clearly suf-

ficient to produce the result and that the conduct of the defendant was not clearly insufficient to produce the result.  17–A M.R.S.A. § 33.  *See Crocker,* 431 A.2d at 1325.  Although in certain circumstances where the actual result is "too remote or accidental in its occurrence to have a [just] bearing on the actor's liability or on the gravity of the offense," MODEL PENAL CODE § 2.03 (Reprint-Proposed Official Draft 1962), alternative principles of causation could become relevant to the jury's consideration of the case, *see generally* W. LaFave and A. Scott, Handbook on Criminal Law § 35 (1972), no such circumstances are here presented.[5]  We discern no error in the court's instructions.

### IV.

■  Defendant also contends that without regard to whether his conduct was reckless, there was insufficient evidence for the jury to have found that it was the legal cause of Mr. Christy's death.

At the time of the accident, Mr. Christy had a prior history of respiratory problems.  In addition, he had been drinking heavily on the day of the accident, was a chronic alcoholic, was a heavy cigarette smoker, was an abuser of valium, and was diagnosed as having endogenous depression.  It is defendant's position that his conduct alone and the resulting injury to his spinal cord was insufficient to cause Mr. Christy's death and that these other factors were responsible for his demise.

Although there was evidence introduced at trial which established that Mr. Christy was predisposed to respiratory problems, there was, nevertheless, considerable evidence

---

**3.**  In that case this Court stated:
> [I]f the State seeks to convict of manslaughter based upon the fact that death was caused involuntarily while the respondent was in the performance of an unlawful act, it must further show that that unlawful act was *malum in se,* or if *malum prohibitum,* that it was the proximate cause of the homicide.

**4.**  Maine's criminal code specifically abolishes unlawful-act manslaughter and substitutes in-

stead several types of negligent and reckless homicide.  17–A M.R.S.A. § 203 (1983).

**5.**  The comment to former section 56 of Title 17–A (now section 33) reveals that although that section "may not be useful in all cases where causation must be explained," it nevertheless was "intended to be an aid to conformity and clarification."

from which to find a *direct* relationship between Mr. Christy's spinal cord injury, as incurred in the accident, and the resulting respiratory problems from which he ultimately died. The death certificate indicated that the cause of death was "bilateral pneumonia due to or as a consequence of chest muscle paralysis due to or as a consequence of C5 spinal cord transection." The medical witness called by the State testified that pneumonia is commonly associated with the kind of spinal injury sustained by Mr. Christy. He explained that persons with chest muscle paralysis do not have enough muscular strength to generate an effective cough sufficient to clear the accumulation of mucus and other secretions which accumulate in the lungs and can result in infection. He opined that Mr. Christy died of pneumonia which was a direct result of respiratory muscle weakness resulting from the injuries sustained in the accident. Defendant's medical expert agreed that Mr. Christy's injuries "started the spiral" that led to his death.

We conclude that there was sufficient evidence from which a reasonable jury could have found beyond a reasonable doubt that defendant's conduct was the legal cause of death. The jury would have been warranted in concluding that "but for" the accident, Mr. Christy would not have died and that any concurrent cause attributable to his predisposition to respiratory problems would not alone have been sufficient to produce his death.

### V.

Defendant next argues that 29 M.R.S.A. § 1312(8) (1983), is violative of Article I, section 6 of the Constitution of the State of Maine and the Fifth and Fourteenth Amendments of the United States Constitution. That section provides that the "revocation of a person's implied consent to submit to a chemical test by refusing to allow the taking of a sample specimen . . . shall be admissable (sic) in evidence on the issue of whether that person was under the influence of intoxicating liquor." Subsequent to the filing of defendant's brief, however, the federal constitutional issue was decided by the United States Supreme Court in *South Dakota v. Neville*, —— U.S. ——, 103 S.Ct. 916, 74 L.Ed.2d 748 (1983). The Supreme Court held that the admission into evidence of a defendant's refusal to submit to a blood-alcohol test is not violative of the Fifth Amendment's guarantee against self-incrimination. *Id.* at 923.

We need not examine in this case the question whether section 1312(8) violates Maine constitutional protections. Snow's bizarre behavior and abusive response to the trooper's warnings under the implied consent law were evidence of the defendant's state of intoxication admissible against him without dependence upon the statutory provision. What constitutes a "revocation of a person's implied consent" and under what circumstances its admission in evidence would be violative of Maine constitutional guarantees are questions we leave open for decision upon an appropriate record.

Defendant's remaining points on appeal are without merit and do not require discussion.

The entry must be:

Judgments of conviction affirmed.

All concurring.