**STATE of Maine**

v.

**Michael E. MARSHALL and Robert A. Marshall.**

Supreme Judicial Court of Maine.
Argued March 13, 1985.
Decided April 25, 1985.

Charles K. Leadbetter, Wayne S. Moss, (orally), Asst. Attys. Gen., Augusta, for plaintiff.

Ricky L. Brunette, (orally), Portland, for Michael Marshall.

John S. Jenness, Jr., (orally), Craig E. Turner, South Paris, for Robert Marshall.

Before McKUSICK, C.J., and NICHOLS, VIOLETTE, WATHEN, GLASSMAN and SCOLNIK, JJ.

WATHEN, Justice.

Michael E. Marshall and Robert A. Marshall appeal from jury verdicts in the Superior Court (Oxford County) convicting them of the murder of Truman Dongo. 17–A M.R.S.A. § 201(1)(A) (1983). On appeal, each defendant contends that the Superior Court erred in the following respects: 1) in denying their motions to dismiss without prior review of the grand jury minutes to determine if the grand jury's indictment was founded upon probable cause; and 2) in denying their motions to exclude witness Michael Perry's testimony. Defendant Robert Marshall also argues that the Superior Court 1) erred in denying his motion for arrest of judgment and part of his motion for a new trial; and 2) in denying his motion for a new trial on the grounds of newly discovered evidence. We find no error and deny the appeal.

I.

On September 21, 1983, Truman Dongo disappeared from his home in Falmouth, Maine. He was last seen by his son, Kenneth, and Sabrina Shaw at his home in the company of the defendants and Lisa Morelli in the early morning hours of September 21, 1983.

On October 15, 1983, Truman Dongo's body was found near a logging road in Stow, Maine. Authorities performing an autopsy and forensic examination determined that Truman Dongo died on or about September 21, 1983 of three or four gunshot wounds from at least two weapons. On October 17, 1983, the Portland police received a telephone call from a Michael Perry of Florida, who said he knew who had killed Truman Dongo. He implicated Michael E. Marshall, Robert A. Marshall, and Lisa Morelli, and all three were subsequently arrested. Lisa Morelli subsequently gave a statement to the police. Upon the State's motion, her trial was severed from that of Michael Marshall and Robert Marshall.

At the defendants' four-day trial in May 1984, Lisa Morelli and Michael Perry supplied the bulk of the State's evidence against the defendants. From their testimony and the other evidence admitted at trial, the following facts were presented: Michael Marshall was an associate of Truman Dongo in the cocaine business and he owed Truman approximately eight thousand dollars. Approximately a week or ten days before September 21, 1983 Truman had tied Michael and held him at gunpoint because of that debt. On September 21, 1983, Lisa Morelli was with Michael Marshall at Truman Dongo's house, where Kenneth Dongo and Sabrina Shaw were also visiting. Later, Kenneth Dongo and Sabrina Shaw left and Robert Marshall arrived, leaving Truman Dongo alone with the defendants and Lisa Morelli. During the evening, everyone drank alcoholic beverages and used cocaine. At some point, Michael Marshall pulled out a pistol, told Truman Dongo that he was tired of his "bull," and tied him up. Michael told Lisa and Robert to search the townhouse; the two found and seized money and cocaine. Although Truman's hands were tied, he voluntarily walked out to a black Trans Am and someone directed him to the back seat. Lisa sat between Michael, who was driving, and Robert, in the front seat. During the drive, the group used "lines" of cocaine and conversed about "old times" between Michael and Truman. Eventually, Robert untied Truman and there were several stops made for soft drinks and beer.

The group arrived at Stow and pulled onto a logging road. Everyone, including Truman, got out of the car and walked around, looking for an earring that Lisa had lost. Lisa, Michael, and Robert were all armed. The group walked about fifty or sixty feet down the road from the car. At this point, Michael asked Lisa whether she was "going to do it." Michael posed this question four times, after which Lisa raised the gun and fired in the "general direction [of Truman]." She dropped her gun, which went off again, screamed, and ran back to the car. She then heard shots

and observed Michael and Robert dragging Truman's body into the woods. Michael, Robert, and Lisa then left the scene and disposed of the guns. They proceeded to the Royal Hotel in South Portland where they counted Truman's money and got high on cocaine.

In the month before their arrest on October 18, 1983, Michael, Robert and Lisa stayed together at various hotels in Maine, New Hampshire, and Massachusetts. On approximately October 2, 1983, while staying in Peabody, Massachusetts, the three met with Michael Perry, an old friend of Michael Marshall's, who had arrived from Florida. Perry testified that he had journeyed to Boston at Michael Marshall's request. Shortly after arriving, he went with Michael Marshall to a motel room and joined Lisa Morelli and Robert Marshall. During the visit everyone "free-based" cocaine. Perry testified to certain inculpatory remarks made by each member of the trio while in the presence of the others.

On May 29, the jury returned verdicts of guilty as to each defendant. Before defendants were sentenced, on July 13, 1984, the separate trial of Lisa Morelli was held. At the Morelli trial, Michael Marshall testified for the first time concerning the facts underlying the charge contained in the indictment. Robert Marshall thereafter sought a new trial claiming his brother's testimony in the Morelli trial as newly discovered evidence. The Superior Court denied all motions and entered a judgment of conviction and sentence as to each defendant. The defendants now appeal to this Court.

## II.

At the outset, both defendants argue that the presiding justice erred in denying their motions to dismiss the indictment and erred in failing to arrest judgment. The defendants argue that because the court refused to inquire into the sufficiency of the evidence presented to the grand jury, the proceedings against them

were constitutionally flawed. We find no merit in this argument. We have repeatedly held that courts in this jurisdiction are not authorized to inquire into the sufficiency of the evidence on which the grand jury acted. *State v. Heald,* 307 A.2d 188, 190 (Me.1973); *State v. Perkins,* 275 A.2d 586, 587 (Me.1971); *State v. Fitzherbert,* 249 A.2d 760, 761–762 (Me.1969). We see no reason to depart from this well-established policy.[1]

### III.

Each defendant contends that the presiding justice erred in denying his motion to exclude Michael Perry's testimony as to the remarks of the other defendant and Lisa Morelli while in the motel room. After an *in camera* examination of Michael Perry, the presiding justice ruled that the statements were admissible against each defendant as an adoptive admission.

During the *in camera* examination, Michael Perry testified that he, Michael Marshall, Robert Marshall, and Lisa Morelli were together at the motel room. Perry explained that he and Michael Marshall were sitting in chairs, and Robert Marshall was standing behind Michael Perry near the door to the bathroom; Lisa Morelli was picking up dirty laundry near the beds. Michael Marshall told Perry that he was with Lisa, Robert, and Truman in the woods, and that he (Michael) was planning to scare Truman, but that Lisa got out of control and shot Truman first. Perry further testified that Lisa affirmed that she

had shot Truman first and had shot him "in the balls." Perry related that Michael Marshall stated his troubles were over. Toward the end of the conversation, Perry suggested "something about turning themselves in." In response, Robert picked up a bushmaster rifle from under the sheets and said, "[N]o one is going to take us in." Perry testified that throughout the conversation Robert Marshall was in the motel room and could hear the conversation. He did acknowledge the possibility that Robert might have stepped into the bathroom momentarily.

### A. ADOPTIVE ADMISSIONS–ROBERT

The court ruled that Robert Marshall, by his statement, "[N]o one is going to take us in", had adopted all of the motel room statements of Michael Marshall and Lisa Morelli and "that Mr. Perry is going to be allowed to testify as to what he heard in that motel room, statements by Michael Marshall, Lisa Morelli, and Robert Marshall." Before the jury, Michael Perry gave essentially the same testimony he had given in the *in camera* hearing.

Defendant Robert Marshall contends that the presiding justice erred in admitting Lisa's and Michael Marshall's statements as against him, because that justice did not find beyond a reasonable doubt that Robert had adopted those statements.

■ Whether under M.R.Evid. 801(d)(2)(B)[2] a party has manifested his

---

1. We find it persuasive to note that although the indictment requirement of the Fifth Amendment to the United States Constitution is not binding on the states, *Hurtardo v. California,* 110 U.S. 516, 4 S.Ct. 111, 28 L.Ed. 232 (1884), federal courts are not constitutionally required to inquire into the sufficiency of evidence before a grand jury. *Costello v. United States,* 350 U.S. 359, 76 S.Ct. 406, 100 L.Ed. 397 (1956). Relying on *Costello,* the federal circuit courts of appeals have consistently upheld federal district court judge's refusals to inquire into the sufficiency of the evidence before a grand jury. *See, e.g., United States v. Short,* 671 F.2d 178 (6th Cir.1982), *cert. denied* 457 U.S. 1119, 102 S.Ct. 2932, 73 L.Ed.2d 1332 (1982); *United States v. Fried,* 576 F.2d 787 (9th Cir.1978), *cert. denied*

439 U.S. 895, 99 S.Ct. 255, 58 L.Ed.2d 241 (1978). Similarly, the majority of indictment states do not permit a defendant to challenge the sufficiency of evidence behind an indictment. *See, e.g., Crimmins v. Superior Court,* 137 Ariz. 39, 668 P.2d 882, 885–886 (Ariz.1983); (but statute permits challenge based on substantive due process); *Schutz v. State,* 275 Ind. 9, 413 N.E.2d 913, 916 (1981); *Ex Parte Port,* 674 S.W.2d 772, 779 (Tex.Crim.App.1984); *State ex rel Sieloff v. Golz,* 80 Wis.2d 225, 258 N.W.2d 700, 711 (1977).

2. M.R.Evid. 801(d)(2)(B):

A statement is not hearsay if: The statement is offered against a party and is (B) a state-

assent to another person's statement is a preliminary question for the judge; the burden of proof is on the proponent to show that an adoption was intended. Field & Murray, *Maine Evidence*, § 801.5 at 194 (1976). In our previous cases interpreting adoptive admissions under M.R.Evid. 801(d)(2)(B), however, we have not expressly defined the proponent's burden of proof.[3] *See, e.g., State v. Johnson,* 472 A.2d 1367, 1371 (Me.1984); *State v. McKenney,* 459 A.2d 1093, 1097 (Me.1983); *State v. Elwell,* 380 A.2d 1016, 1020–21 (Me.1977).

At the outset, we note that the majority of appellate courts, in keeping with the general evidentiary principles governing preliminary questions, permit the trial judge to rule on the basis of his or her own factual inquiry. *See, e.g., McCormack, Evidence* § 270 at 653, § 53 (2d ed. 1972); 4 *Weinsteins Evidence,* ¶ 801(d)(2)(B)[01] at 801–200 (1984); *United States v. Giese,* 597 F.2d 1170, 1196 (9th Cir.1979), *cert. denied* 444 U.S. 979, 100 S.Ct. 480, 62 L.Ed.2d 405 (1979). The court should make a threshold determination that sufficient facts have been introduced for the jury reasonably to conclude that the defendant adopted the admission of another. This procedure is in accord with our previous decisions. *See, e.g., McKenney,* 459 A.2d at 1097; *Elwell,* 380 A.2d at 1020–1021; *State v. Anderson,* 409 A.2d 1290, 1299 (Me.1979).

We conclude that the presiding justice was correct in admitting Michael Marshall's and Lisa's statements through Michael Perry's testimony as adoptive admissions under Rule 801(d)(2)(B). Sufficient facts were introduced so that a jury could reasonably conclude that Robert had heard and understood the statements; and

adopted them. *See, e.g., State v. Anderson,* 409 A.2d 1290, 1299 (Me.1979); Field & Murray at § 104.1. Perry was reasonably certain that Robert had stayed within the motel room during the entire conversation. At the conclusion of the conversation, when Perry suggested that they turn themselves in, Robert brandished the bushmaster rifle and stated, "No one is going to take us in." Any evidence that Robert had entered the motel bathroom at any point during the conversation was properly for the jury to evaluate.

## B.  ADOPTIVE ADMISSION-MICHAEL

The defendants also assert that the presiding justice erred in admitting against Michael Marshall Robert's statement, "No one is going to take us in."

The context of this statement is similar to that with which this Court was presented in *State v. Kimball,* 424 A.2d 684 (Me. 1981). In *Kimball,* we upheld the trial court's admission of an extra-judicial statement made by a codefendant in an active three-way conversation because the statement was merely corroborative and was repetitious of what the defendant had just said. 424 A.2d at 688. Similarly, Robert's statement, made in response to Michael Perry's suggestion that they turn themselves in, strongly corroborates Michael Marshall's previous statements that they had been involved in the murder and that [Michael Marshall's] problems were over. Thus, a reasonable jury could properly find that Michael had adopted Robert's statement, and the presiding justice did not err in admitting the statement through Michael Perry's testimony.[4]

## IV.

Finally, defendant Robert Marshall argues that the Superior Court erred in deny-

---

ment of which he has manifested his adoption or belief in its truth.

3. In *State v. Casale,* 148 Me. 312, 92 A.2d 718 (1952), which we decided prior to the adoption of the Maine *Rules of Evidence,* we stated that whether testimony may be given regarding statements made in the presence of the accused was a matter of sound judicial discretion.

4. Because we find that the statements were properly admitted as adoptive admissions, the defendants' argument that they were denied their right to confront witnesses in violation of *Bruton v. United States,* 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968) is without merit.

ing his motion for a new trial, made pursuant to M.R.Crim.P. 33.[5]

The defendant argued that the motion should be granted on two grounds: 1) newly discovered evidence; and 2) in the interests of justice. Robert testified, for the first time, at the hearing on the motion. He stated that he had not shot Truman, had not intended to shoot Truman, and, indeed, had not been physically close to Michael, Lisa, and Truman for most of the time upon their departure from the car at Stow. He also introduced the transcript of his brother's testimony at Lisa Morelli's trial, which corroborated his testimony.

On a motion for a new trial based on newly discovered evidence, the defendant must show, by convincing evidence, the following:

> (1) That the evidence is such as will probably change the result if a new trial is granted; (2) that it has been discovered since the trial; (3) that it could not have been discovered before trial by the exercise of due diligence; (4) that it is material to the issue; and (5) that it is not merely cumulative or impeaching, unless it is clear that such impeachment would have resulted in a different verdict.

*State v. Lord,* 458 A.2d 432, 433 (Me.1983).

The presiding justice's decision will be upheld on appeal unless it is clearly erroneous. *Id.*

We find no error in the court's ruling. In *State v. Harding,* 408 A.2d 1003 (Me.1979), the defendant moved for a new trial because an accomplice, who had previously claimed the Fifth Amendment, was willing to testify favorably for the defendant at a new trial. We ruled that the trial court did not abuse its discretion in denying the defendant's motion for a new trial because the evidence

was merely corroborative of evidence which [defendant] could himself have presented, and which he elected not to disclose, to the jury. Under analogous circumstances, we said in *State v. Flaherty,* Me., 340 A.2d 212 (1975) that such tactical decision estops the defendant from seeking a new trial on the ground of newly discovered evidence.

*Harding,* 408 A.2d at 1005.

Similarly, Robert's testimony at the motion hearing clearly shows that he at all times had knowledge of the substance of his brother's testimony at Lisa Morelli's trial. His decision not to tell his attorney or not to tell his story to the jury was essentially a tactical one, notwithstanding the family pressures he may have experienced.

The defendant also argues that because of the compelling family pressures not to testify, an "emotional gun" was held at his head, and that the interests of justice require that he have a new trial. We have previously indicated in *State v. McDonough,* 350 A.2d 556, 561 (Me.1976), another case involving two brothers and family pressures, that the interests of justice do not require such a result.

The entry is:

Appeal denied.

Judgments affirmed.

All concurring.

5. M.R.Crim.P. 33 provides in pertinent part:

> The court on motion of the defendant may grant a new trial to him if required in the interest of justice. ...
>
> A motion for a new trial based on any ground other than newly discovered evidence shall be made within ten days after verdict or finding of guilty or within such further time as the court may fix during the ten-day period. A motion for a new trial based on the ground of newly discovered evidence may be made only before, or within two years after, final judgment.